*476 OPINION
By KING, J.
This is an action brought on behalf of the State of Ohio by the Attorney General against the defendant, Commercial Motor Freight, Inc., for the collection of the sum of $14,656.16 alleged to be due the State Workmen’s Compensation Fund.
The plaintiff in his petition alleges in substance that defendant, during the period beginning August 15, 1935, and ending January 1, 1938, regularly employed three or more persons and was a subscriber to the State Workmen’s Compensation Fund; that it was indebted to said fund in the amount of $14,656.16, and.that it refused to pay such amount upon demand therefor.
To the petition defendant filed a general denial.
Upon the issues thus joined the cause came on for hearing before this Court, a jury having been waived.
The principal question for determination is whether certain “owner operators” of tractors and trucks, used in transporting freight which defendant was called upon to haul in the conduct of its business, were employees of defendant or bore the relation of independent contractors to said defendant.
The record discloses that the plaintiff in support of his claim introduced in evidence the finding of the Industrial Commission in which a premium liability in the amount of $14,656.16 due the Workmen’s Compensation Fund from defendant was set forth. Plaintiff rested his case upon the introduction of this finding.
There is nothing in the finding from which the Court can ascertain the facts or reasoning upon which the Industrial Commission based its determination. Thus we must base our decision upon the facts appearing in the record as they were developed by the parties to this action.
The testimony of the witnesses and the exhibits disclose that defendant was engaged in the business of transporting merchandise over designated routes in Ohio by means of motor vehicles. This business was conducted under authority ¿ranted defendant by the Public Utilities Commission of Ohio.
In the operation of its business defendant entered into agreements with owners of “tractors”, used to pull traitors owned by defendant, and trucks for the transporting of merchandise, defendant was required to carry. It is the relationship between the owners of the “tractors” and trucks and defendant with which we are chiefly concerned in this cause.
The agreements above referred to are oral; thus their terms must be ascertained from testimony of the witnesses and the exhibits introduced.
It is contended by plaintiff that the relationship between the owners of the “tractors” and truck and defendant is that of employer and employee and by defendant that the relationship is that of principal and independent contractor.
The evidence discloses that the owners of the “tractors and trucks” are designated as owner-operators and we shall use the same designation. The services performed by the owner-operators fall into three classifications:
1. The owner-operators move with their own tractors, loaded trailers and semi-trailers belonging to defendant from terminal to terminal. The owner-operators engaged in this type of activity are *477 ■described as “over the road operators”.
2. Peddle route operators who are engaged in transporting merchandise consigned to points within a limited urban or rural area, the merchandise being picked up and delivered from door to door.
3. City pick-up and deliveries, involving the delivery of merchandise from one of defendant’s terminals in a particular city to a consignee and from a consignee to the terminal.
Payment for the services rendered by the owner-operators on over-the-road hauls is upon the ■basis of a stipulated amount per mile driven. Operators whose services come within the second and third classification are paid upon the basis of a stipulated amount per hundredweight of merchandise transported. All owner operators own their own tractors or trucks. Maintenance, repairs, gasoline and oil are expenses paid for by the owners. Insurance, covering cargo, property damage and personal injury, is purchased by and is in the name of the defendant. The owner-operators are charged three per cent of the amount paid them by defendant for the insurance purchased. The owner-operators employ helpers or drivers when they desire. The owner-operators in some instances own and operate more than one tractor under their agreement with defendant. In such instances they, of course, employ additional drivers. Defendant furnishes to each owner-operator of a tractor a “fifth wheel” which is used to attach defendant’s trailers to the tractors. The owner-operator and his drivers, if any, are required to take physical examinations. They are required to observe safety rules and regulations issued by the Public Utilities Commission of Ohio and the Interstate Commerce Commission, in addition, observance of defendant’s rules and regulations governing drivers of its own equipment is required. Defendant inspects the equipment of the owner-operators to see if all safety regulations are being complied with. The owner-operators are required, when transporting merchandise over routes which defendant operates, pursuant to authorization by the Public Utilities Commission, to have attached to their motor vehicle plates bearing defendant’s name and Public Utilities certificate number. The movement of merchandise transported by the owner-operators is over routes and to points and places designated by defendant’s dispatchers.
The facts as above set forth are controlling in this case.
Sec. 1465-61 GC defines what persons are to be considered as employees for the purposes of the Workmen’s Compensation Act of Ohio. We quote the following language from that section of the General Code of Ohio.
“The term ‘employee’, ‘Workman’ and ‘operative’ as used in this act shall be construed to mean every person in the service of any person, firm or private corporation, including any public service corporation employing three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written.”
If the owner-operators involved herein are working under a “contract of hire” they are employees under the language of §1465-61 GC and defendant is subject to premium liability as claimed by plaintiff upon the basis of the wages paid the operators. If, on the other hand, the owner-operators are independent contractors defendant *478 is not subject to premium liability on the amounts paid them.
The line of demarcation between the relationship of employer and employee and that of principal and independent contractor, is not always clear. Each case must be decided in the light of all the facts and circumstances surrounding it.
The relationship between a person engaging the services of another for the performance of certain work, and the person doing the work is determined from the extent of the control vested in the person, engaging another’s services over the manner and means of accomplishing the task to be done.
We must, therefore, ascertain from all the facts and circumstances in evidence the extent of the control defendant may exercise over the owner-operators and also the extent to which the owner-operators are free to exercise their own judgment and will in accomplishing the tasks they are engaged to perform.
The basic facts bearing upon the relationship between the owner-operators and defendant are not disputed. The controversy between the parties is with respect to the nature of the relationship they create.
The controlling facts as they appear in the record are as follows: The owner-operators are the owners of the equipment they use in the performance of their work. They bear the entire cost of maintaining and operating such equipment. They are paid on the basis of miles driven or weight of merchandise carried. They employ as many helpers or drivers as they deem necessary for the operation of their equipment; the terms of employment, including compensation, under which the drivers and helpers work are matters entirely between them and the owner-operators. The purpose of defendant in engaging the services of the owner-operators is to obtain the transportation of merchandise from one location to another through the medium of motor vehicles. It is cur opinion that upon the basis of these uncontroverted facts that the owner-operators so engaged are acting in the capacity of independent contractors and not employees.
Plaintiff contends, however, that the physical examination requirement imposed upon the owner-operators and their drivers by defendant; the necessity of complying with safety standards of the Public Utilities Commission of Ohio and the Interstate Commerce Commission; the issuance of the defendant’s own rules of conduct to all of its employees and the owner-operators; defendant’s right to inspect equipment belonging to owner-operators at any time and order compliance with safety standards; the placing . of “fifth wheels” on owner-operators’ tractors' and retaining title to said “fifth wheels”; the investigation of drivers employed by the owner-operators by defendant; the bolting of defendant’s name and number plate on owner-operator’s equipment; the insuring of all equipment by defendant; the dispatching of shipments by defendant; the collection in some instances of freight and C. O. D. charges in defendant’s name by owner-operators and the furnishing of overnight lodging in some instances creates the relationship of employer and employee between defendant and the owner-operators. With this conclusion we cannot agree. For the most part, these requirements are conditions imposed upon certificated carriers by the Public Utilities Com *479 mission of Ohio and the Interstate Commerce Commission for the protection of the public. The inspection of the equipment by defendant's employees was done solely for defendant’s protection and resulted from a duty imposed by law. Such action was not dictated by the kind of relationship between defendant and the owner-operators.
The other instance referred to by plaintiff as establishing the relationship of employer and employee fall short. In our opinion the uncontroverted facts appearing in the record clearly establish the relationship of principal and independent contractor and that the evidence relied upon by plaintiff is not inconsistent with such relationship but is entirely compatible therewith.
We have carefully read the briefs of respective counsel and analyzed the case cited. The difficulty lies not so much in the determination of the legal principles involved, but in the application of the rule to a given set of facts and circumstances.
In the case before us we have reached the conclusion that the relation of principal and independent contractor obtained between defendant and the owner-operators and not that of employer and employee.
With respect to the question of classification of employees the plaintiff made a prima facie case vwhich imposed upon the defendant the burden of going forward and establishing by evidence the erroneous classification of the employees involved. This, defendant failed to do. Defendant claims that plaintiff cannot go back for a period of five years and reclassify employees and assess a premium deficiency when during the time covered by the assessment an audit had been made which did not change the classification reported by defendant. Defendant further contends that plaintiff cannot assess premium liability retroactively for more than twenty months, since an employer, by rule of the Commission, is permitted to an adjustment, on his request, of premium liability for period of only twenty months prior to such request.
It is our opinion that the Industrial Commission has ample authority to go back for a period of five years and reclassify employee by virtue of the provisions of §1465-54 GC, and kindred sections. While there is no showing that the rule of the Commission preventing an employer from obtaining an adjustment of premium liability for a period of more than twenty months is unreasonable, we may assume that it .is; even so it can have no effect upon the Commission’s authority under §1465-54 GC.
We cannot agree with plaintiff’s contention that the act of classifying employees by the Commission is final, thereby precluding defendant from making a defense against such classification, as the defendant has sought to do in this case; but what we do mean to say is that the defendant has failed to overcome the prima facie case made by the introduction in evidence of the Commission’s finding. In 'other words, we are not satisfied that the defendant has made a proper showing that the classification made by the Commission was erroneous.
Suffice it to say hams given as Christmas presents can, under no stretch of the imagination, be considered as wages paid.
Let an entry be drawn in accordance with conclusions announced herein.