## ORANGE STATE OIL CO. v. FAHS, Collector of Internal Revenue.

### No. 634—M.

District Court, S. D. Florida,
Miami Division.

Dec. 14, 1942.

Mark Wilcox (of Hudson & Cason), of Miami, Fla., for plaintiff.

Herbert S. Phillips, U.S.Atty., of Tampa, Fla., and Harry G. Taylor, Sp. Asst. to U. S. Atty., of Miami, Fla., for defendant.

HOLLAND, District Judge.

This cause came on for trial before the court without a jury; testimony was introduced by both plaintiff and defendant, briefs were submitted and oral arguments made by counsel for both plaintiff and defendant. The court has considered all of the oral testimony and documentary evidence introduced by both parties in this cause and after examination of the briefs and consideration of the arguments is fully informed in the premises. The court thereupon makes the following findings of fact:

The plaintiff, Orange State Oil Company, has paid to the defendant, John L. Fahs, as Collector of Internal Revenue, under protest, the sum of $13,672.45 for old age benefit taxes, under the provisions of Title 8 of the Social Security Act, 42 U.S.C.A. § 1001 et seq., for the years 1937, 1938, 1939, 1940 and the first three-quarters of the year 1941. The plaintiff also paid to the defendant, as Collector of Internal Revenue, as aforesaid, the sum of $2,292.97 for Unemployment Insurance taxes under the provisions of Title 9 of the Social Security Act, 42 U.S.C.A. § 1101 et seq., for the years 1937, 1938, 1939 and 1940. The plaintiff also paid, under protest, to the said defendant, as Collector of Internal Revenue, as aforesaid, the sum of $1,078.88 for interest upon the said two tax payments. The said taxes were assessed by the defendant against the plaintiff, and were paid by the plaintiff upon commissions paid, during the aforesaid periods to certain persons who distribute the petroleum product of the plaintiff, which is a wholesale distributor of petroleum products in the State of Florida.

Of the said sum of $13,672.45 paid by plaintiff for old age benefit taxes, one-half of said sum was paid by plaintiff from its own funds and one-half thereof was deducted by plaintiff from the commissions earned by said persons and paid by plaintiff. The entire sum paid for unemployment insurance taxes, and the entire sum paid for interest upon all of said taxes, was paid by plaintiff from its own funds.

All of the said taxes and interest payments were paid by plaintiff under protest, claims for refund thereof in proper form were duly filed within the time allowed by law, said claims for refund of the said taxes and interest were duly refused and denied by the Commissioner of Internal Revenue of the United States prior to the filing of the complaint in this cause. This suit was instituted within the time allowed by law after the refusal and rejection of the said claims by the said Commissioner of Internal Revenue.

The said taxes were assessed and paid upon commissions paid by plaintiff to certain persons referred to in the complaint as "operators."

These operators fall into two groups. First, there are thirteen persons known as "Commission Drivers." No written contract has been executed between plaintiff and the Commission Drivers. These persons, each of whom owns and operates a truck for the distribution of petroleum products, receives the product from the terminal or warehouse of plaintiff, receipts for the same and then sells and delivers it to retail distributors; each of them remits to plaintiff the full amount of the wholesale price of the product and at the end of the month receives from plaintiff a commission, computed upon the number of gallons of the product handled during the month; where he sells the product to persons approved by plaintiff for credit, the Commission Driver receives credit for such amount against the number of gallons charged to him; each driver locates his own customers and works up his own trade; plaintiff makes no effort to control his movements or activities; each such person pays all of the expense connected with the distribution of the product, fixes his own hours of work, determines the frequency with which he will convass his territory, hires and pays his own employees, if any, and is accountable to plaintiff only for the wholesale price of the product delivered to him. Plaintiff supplies to each of such persons one tank, on which the names of plaintiff and such driver appear, but the driver supplies all of his own automotive equipment and pays all of the expenses for upkeep, repair, maintenance and operation thereof. Each such driver, upon receiving the product, signs a receipt therefor on a form prescribed by plaintiff; the product is charged to him and he is required to account for the wholesale price thereof; upon sale to his customers the driver obtains a receipt for the amount sold and files reports of his sales and accounts for the wholesale price upon accounting form supplied by plaintiff.

The second and larger group consists of ninety-eight persons. In each instance these operators have executed with plaintiff a written contract defining the rights and obligations of the plaintiff and the operator respectively. In each instance, plaintiff owns a "bulk plant" or a "bulk station," consisting of underground storage tanks, necessary buildings for the storage of petroleum products and pumping equipment. Plaintiff obtains and pays for State, County and (where required) City licenses as a wholesale distributor of petroleum products for each such bulk plant. The operators sell the gasoline and other petroleum products of the plaintiff on a commission basis; that is to say, plaintiff ships its product to the operators on consignment and they in turn sell it to their customers, bearing all expense of the sale and distribution, and receive a commission of so much per gallon on all of the products so sold by them. The operators furnish their own trucks and automotive equipment for the distribution of the product and employ and pay their own servants and employees to assist them. Plaintiff bears no part of the expense of selling and distributing the product and exercises no control and has no right of control over the employees of the operators. The operators, respectively, determine for themselves what portion of their time, if any, will be devoted to the enterprise, the frequency with which they will canvass their territory and adopt such sales methods and business practices as they determine to be proper.

Plaintiff provides various accounting forms for the use of the operators; upon receipt of the product in bulk the operator executes a receipt upon a prescribed form and is charged by the plaintiff with the wholesale price thereof. At regular intervals the operator files with plaintiff a report, upon prescribed forms, giving a statement of sales and an inventory of products on hand and unsold. The operator remits to plaintiff the wholesale price of all of the product sold and at the end of the month plaintiff sends to each operator a check for the commissions earned during the month. The operator is permitted to sell the product on credit to persons whose credit has been approved by plaintiff and in such cases the operator receives credit for the amount so sold as if he had remitted cash therefor. The operator is required to account for the wholesale price of all products entrusted to his care, either by remitting cash or turning in delivery tickets or receipts from persons whose credit has been approved. Plaintiff supplies to each operator a tank for his truck and the names of the plaintiff and the operator appear thereon. There is no limitation or restriction upon the operators engaging in other lines of business and in most instances the operators are engaged in other businesses or lines of business to the operation of which they devote, in some instances, as little as ten per cent. and, in other instances, as much as seventy-five per cent. of their time.

Plaintiff required each of said persons to maintain public liability insurance upon his automotive equipment used in the distribution of the petroleum products; in each instance the operator paid the premium for all such insurance policies.

The contract executed by plaintiff and each of the said ninety-eight operators is identical in form except as to the amount of commissions allowed to the respective operators. The form of contract so executed is attached to the complaint. Another form of contract was in existence between the plaintiff and said operators prior to January 1, 1937. Said form of contract gave plaintiff the right to control certain activities of the operators but this right of control was not exercised by plaintiff. This form of contract was cancelled and superseded by the form of contract entered into as of January 1, 1937. During all of the period covered by the tax payments in this cause, the contract, copy of which is attached to the complaint, was in effect. The rights, duties and obligations for the period for which the taxes were paid, were those set forth in said contract.

### Conclusions of law.

1. The plaintiff neither had nor exercised any control over the means and methods used by the operators in the sale and distribution of plaintiff's products. The requirement of plaintiff as to the signing of receipts, the filing of reports and the keeping of records does not constitute control over the means and methods of accomplishing the results sought by the contracts. The business contemplated by the relationship between the plaintiff and the operators in this case was the sale and distribution of petroleum products. Requirements by plaintiff that records of the quantity of the product received, the sale thereof, the quantity on hand, and other similar requirements as to the form of accounting does not constitute control by the plaintiff of the means and methods employed by the operator in accomplishing the result sought, which was the sale and distribution of the product. Under the terms of the written contract and in actual practice the respective operators were free to adopt their own means and methods of accomplishing this result.

2. Said operators are independent contractors and are not employees of the plaintiff. See Texas Co. v. Higgins, D. C., 32 F.Supp. 428, affirmed 2 Cir., 118 F.2d 636. Also, Indian Refining Co. v. Dallman, D.C., 31 F.Supp. 455, affirmed 7 Cir., 119 F.2d 417.

3. Said operators being independent contractors and not employees of the plaintiff are not included within the provisions of either Title 8 or Title 9 of the Social Security Act, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq. and plaintiff was not legally required to pay taxes upon the commissions earned by the said operators.

4. The taxes so assessed and collected by defendant of and from the plaintiff were illegally assessed and collected. Plaintiff is entitled to judgment for the amount of said taxes so illegally assessed and collected, together with the interest paid by the plaintiff thereon.

5. Certain agreements, styled "Bulk Plant Agreement," were tendered in evidence, and left with the clerk, dependent on future admission or rejection of same in evidence. Said agreements are considered in evidence. Said agreements as reflecting terms and conditions of contract are largely cumulative and encumber the record, and may be withdrawn by stipulation should counsel so agree, but either party may insist on any one or more being retained in the record, subject to the discretion of the court in relieving the record of undue encumbrance.

6. The defendant has introduced in evidence the form of agreement under which the operators worked prior to the time involved in this action. The court has admitted into evidence such contract or contracts, but holds the operators independent contractors under the so-called "new agreements" against the defendant's contention.

Judgment will be entered in accordance with these findings of fact and conclusions of law.