AMERICAN OIL CO. v. FLY, Collector of Internal Revenue.

No. 10324.

Circuit Court of Appeals, Fifth Circuit.

May 11, 1943.

Percy N. Booth, of Louisville, Ky., Ben A. Harper, of Chicago, Ill., and T. C. Hannah, of Hattiesburg, Miss., for appellant.

Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and Toxey Hall, U. S. Atty., and A. Y. Harper, Asst. U. S. Atty., both of Jackson, Miss., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

The simple question presented is well stated by appellee thus: "Whether the operator of wholesale distributing plants owned by taxpayer, and individuals engaged by such operator to assist him in marketing and distributing taxpayer's petroleum products, are employees of taxpayer within the meaning of Titles VIII and IX of the Social Security Act", 49 Stats. 636, 639, 42 U.S.C.A. §§ 1001, 1101, and ff. The taxes were paid and suit brought to recover them; the court held the distributors and the persons they engaged to help them were employees of American Oil Company, the taxpayer, and gave judgment against recovery. The Oil Company appeals.

Three forms of contracts with distributors in Mississippi appear in the record, differing in some details but agreeing in substance. They provide, in brief, as follows: The Oil Company is to furnish its products for distribution, at a wholesale storage and distributing station belonging to the Company which includes storage tanks, warehouses, switch tracks, driveways and other facilities and equipment, to be maintained at the Company's expense. The products sent are to be at the election of the Company, and the prices to the distributor are to be fixed by the Company, delivered at the station in carload lots; and the products are to be the property of the Company while on hand unsold. The distributor is to furnish at his own expense delivery trucks, tanks, and other equipment, and bear all expense of operating them, and of unloading and distributing the products, including all expense of the bulk plant operations. Liability insurance is to be carried by the distributor to protect both the Company and the distributor. The distributor agrees absolutely to pay on demand for all commodities delivered to him at the prices fixed by the Company, except what remains on hand unsold. He agrees to use his best efforts to sell and distribute the largest possible quantity, for cash, or at his own risk on credit, except that the Company may in writing select customers it is willing to credit, to whom the distributor may sell, reporting each such sale, and taking credit as though cash had been remitted. On other sales the proceeds are to be remitted to or deposited to the credit of the Company as directed, and accounts of all sales are to be kept, and are subject to inspection as may be required by the Company. The distributor has no right to bind the Company by any contract, or assign or delegate his duties without the consent of the Company, but may employ others to assist him, who will be strictly the agents and employees of the distributor and not of the Company, and subject solely to the direction and control of the distributor. The distributor's compensation is to be named commissions per gallon and per pound to be allowed in settlements with the Company. The distributor assumes responsibility for all payroll social security taxes, and will reimburse any the Company has to pay. The contract is for a territory not specifically defined, and for an indefinite time, cancellable by either party on one day's notice. The practice of the parties under the contracts was in substantial accord with their terms. Each distributor had several truck drivers and other persons hired, and he paid and directed them. Each distributor controlled his own hours and methods of work, and sold to such persons as he could profitably reach at prices he could afford to quote. The State and municipal permits and licenses for operating the bulk station were taken out and paid for by the Oil Company. The motor carrier permits for the trucks were taken out and paid for by the distributor. The distributors do not usually give their whole time to this work, but have other independent enterprises.

The Social Security Act, Sections 801, 804, 901, in levying the taxes in controversy, speaks of "wages", and an "employer * * * having individuals in his employ". Sections 811 and 907 define "employment" as "any service, of whatever nature, performed within the United States by an employee for his employer". "Employer" and "employee" are not defined. In a broad sense one "employs" another whenever he uses his time and effort under any sort of contract. But Treasury Regulations 91, Arts. 2 and 3, made to enforce the Act, adopt a much narrower construction of it, expressly adopting as the test of the employer-employee relation the common law distinction between master and servant and independent contractor, the critical question being whether "the person for whom services are performed has the right to control and direct the individual who performs the services not only as to the result to be accomplished by the work, but also as to the details and means by which that result is accomplished; that is,

an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done." Many salesmen, especially those on commission, were not included as employees under this definition. In 1939 an attempt was made in Congress to amend the Act so as to include them. The House of Representatives passed the amendment, but it was defeated in the Senate, and in conference.[1] The amendment in terms proposed a departure from the master and servant test; its defeat must be taken as showing Congressional acquiescence in that test. The definition of employee made in the Regulations must stand.

The distributors' contracts of American Oil Company such as here involved were held by the Supreme Court of Mississippi, with reference to State Social Security taxes, to show a relation of independent contractor rather than master and servant. American Oil Co. v. Wheeless, 185 Miss. 521, 187 So. 889. We are asked to hold that under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this construction of these Mississippi contracts is conclusive upon us. We do not think so. The question here is not the rights and liabilities of the contracting parties to each other, or to members of the public, but whether a federal tax is due by one of the parties. The Social Security Act operates uniformly throughout the United States, and under like conditions of employment the tax ought to be paid in every State uncontrolled by local decisions as to what relation is created by the contracts. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368; Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Palmer v. Bender, 287 U.S. 551, 555, 53 S.Ct. 225, 77 L.Ed. 489. The Mississippi decision, reinforced by Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880, is therefore only persuasive authority. But it is supported by many decisions elsewhere, and opposed by none at all in point. Those applying the Social Security Act seem to be of one accord. Texas Co. v. Higgins, D.C., 32 F.Supp. 428, affirmed, 2 Cir., 118 F.2d 636; Indian Refining Co. v. Dallman, D.C., 31 F.Supp. 455, affirmed 7 Cir., 119 F.2d 417; Burruss v. Early, D.C., 44 F. Supp. 21. We think they correctly construe it.

These contracts are an arrangement whereby the Oil Company seeks to sell its products from its own warehouse in the greatest possible volume, and they make several provisions as to how the proceeds are to be safeguarded and accounted for. But the work of selling and distributing is left, as to means and details, to the distributor. He finds his customers as and where he thinks best, makes the price he can afford and can get, uses his own equipment, and helpers selected, controlled and paid wholly by himself. We see no basis at all to think these helpers are the servants of the Oil Company, since the contract is to the exact contrary, and the Company has no voice in their selection, control or discharge. The distributor himself is not the servant of the Oil Company, but an independent contractor, determining for himself when and where he will work, with whom he will deal, how he will deliver what he sells, and whether in most instances he will credit. He is himself bound to pay at all events for all products he receives, at the price made to him by the Company, except those left unsold, or sold by special authorization to certain customers. The possibility of cancellation of the contract if he displeases the Company might be used as a club to force compliance with any requirement of the Company, but it does not give any *right* of control beyond that given by the contract. According to the contract and the practice under it the distributor engages to find customers and sell products and deliver them. The persons and the particular means he will employ are left entirely to his control. Although the business done is the business of the Oil Company and the products and their proceeds are its property, the distributors are not employees under the Act, and the persons they employ, though employees, are not the employees of the Oil Company. The taxes were illegally collected.

The judgment is reversed with direction to render another accordingly.

---

[1] Conference Report of Representative Doughton Aug. 4, 1939, on H. R. 6635, p. 14.