114

**MUTUAL TRUCKING CO. v. UNITED STATES.**

No. 4840 Civil.

District Court, N. D. Ohio, W. D.

June 30, 1943.

Wilbur E. Benoy, of Columbus, Ohio, and Otto L. Hankison, of Toledo, Ohio, for plaintiff.

Don C. Miller, U. S. Atty., of Cleveland, Ohio, and Gerald P. Openlander, Asst. U. S. Atty., of Toledo, Ohio, for defendant.

KLOEB, District Judge.

The plaintiff seeks to recover the sum of $7,504.54, alleged to have been erroneously and illegally collected from it as taxes under Titles 8 and 9 of the Social Security Act, 42 U.S.C.A. § 1001 et seq., § 1101 et seq., and the Federal Insurance Contributions Act, 26 U.S.C.A. Int.Rev. Code, § 1400 et seq.

The record in this case affords a good cross sectional view of the operation of the plaintiff company, particularly during the year 1939, which is the tax year involved.

The question for the Court to determine from the record is whether the plaintiff company is liable for Social Security taxes because of its trucking operations. This reaches the fundamental question for determination, i. e., whether the owner-operators who did the hauling that plaintiff company had contracted to do for the Universal Car Loading Company were independent contractors, or whether they and their helpers were employees of plaintiff. If they were employees of plaintiff during the year 1939, then plaintiff is liable for the payment of taxes required under the Social Security Act. If they were not employees of plaintiff, then the owner-operators are liable for the taxes, and the Government should look to them for payment.

It appears that the owner-operators entered into a contract with the plaintiff company, a form of this contract being a part of the record; that these owner-operators worked for plaintiff under scheduled rates paid for hauling from terminal to terminal; that they pick up the loaded trailers at terminals of the Universal Car Loading Company after they have been loaded by the latter company, and transport the load to a dock of the Universal Car Loading Company at another terminal; that the owner-operator owns his own equipment, consisting of a tractor and a trailer; that he has attached thereto the Interstate Commerce Commission plates furnished by the Commission to the plaintiff company, but otherwise operates under his own various State license plates and drivers' licenses; that he hires, pays and discharges his drivers; that he carries his own vehicle insurance covering fire, theft, public liability, property damage and collision insurance, although a blanket public liability policy, required by the Interstate Commerce Commission, is carried by plaintiff company; that under the contract of employment it is specifically

stated "that Second Party is a contractor only and is not the agent, employee or representative of First Party for any purpose whatever"; that the contract further provides, paragraph 4: "First Party hereby grants permission to Second Party, without charge or costs, as and when necessary and required, to use its certificates or permits for such hauling of freight as he may do for First Party, but for no other purpose whatever. All license tags, drivers' licenses, union fees or dues, fees assessed by municipal corporations, or other fees of any kind or character other than as herein provided, shall be paid and borne by said Second Party, and First Party shall have no responsibility whatever to Second Party, his drivers, helpers, or employees for any fines, costs or expenses incurred by Second Party or any of his employees by reason of his or their failure to have proper markings on equipment, or by reason of any violation by second party or any of his employees, of any rule or order of the Bureau of Motor Carriers of the Interstate Commerce Commission, or any Public Utility Commission, or other authority of any state; and nothing in this contract shall be in any way construed to constitute Second Party or any of his agents or employees as the agent, employee or representative of First Party. Second Party also agrees that he will, at all times, comply with all laws, rules and/or regulations of the Bureau of Motor Carriers of the Interstate Commerce Commission, or any Public Utility Commission, or other authority of any state in and through which he may be operating under this contract with respect to workmen's compensation or other insurance for the benefit or protection of his employees, and that he will assume full responsibility for the payments of all State and Federal taxes for unemployment insurance, old age pensions, or other Social Security laws, as to all persons engaged in the performance of this contract, and further agrees to meet all requirements of regulations now or hereafter adopted or promulgated by legally constituted authority in respect thereto."

It appears from the record that the above provision in the contract was adhered to by the parties thereto. It appears further that the owner-operator, either as the driver of his own vehicle, or through employees hired by him, travels the routes from terminal to terminal that the plaintiff company is licensed to travel; that he draws his pay upon completion of a haul by presentation of his trip sheet at one of plaintiff's offices, and out of this pay check he pays his drivers and maintains and operates his equipment, and after this has been done pockets such profits as may remain over.

It appears further that the trailers owned by the owner-operators, and engaged in hauling the goods of the Universal Car Loading Company for the plaintiff company, had painted on them the words "Operated for Mutual Trucking Company"; that the drivers of the vehicles carried identification cards that had been issued by the plaintiff company, but that were provided by an insurance company; that certain inspectors of the plaintiff company patrolled the highways traversed by these vehicles for the purpose of policing to see that speed laws and other requirements of the laws were observed by the drivers of the vehicles; that if infraction of the law was discovered by an inspector he would call the police, or would report the infraction to a Safety Council, which was maintained and operated by the owner-operators, for such discipline to be administered as in the judgment of the Safety Council was deemed best.

It appears further from the record that there has been no effort at tax evasion on the part of the plaintiff company, the form of contract used having been devised and used prior to the year 1932, long before the advent of the present Federal Social Security Law.

I am of the opinion that the relationship of employer and employee did not exist between the plaintiff company and the owner-operators and their drivers; that the owner-operator was engaged in a business of his own, carried on by means of the use and operation of his own equipment for a lump sum paid per trip, out of which he paid those whom he had hired to do his driving; that the degree of control over the hiring, paying, managing and discharging of his employees clearly stamped the employer-employee relationship as existing only between the owner-operator and his own drivers; that no control over these drivers existed that was in any way inconsistent with the contract provisions.

It seems to me that the plaintiff company had certain duties of control cast upon it through its license obtained from the Interstate Commerce Commission, as well as through the Public Utilities Commission Acts. It had a duty to safely transport

the goods involved from the consignor to the consignee, and it had a duty to the public to see that these goods were so transported as not to endanger the safety of the public. Such control as is shown to have been exercised in the record was a control centering about these requirements of safe transportation and safety to the public.

The tax that was levied in this case for the year 1939 by the Collector of Internal Revenue was an arbitrary sum, i. e., one-third of the sums paid by the plaintiff company to the owner-operator. Of necessity it had to be an arbitrary sum, for the plaintiff company had no power nor authority under its contract with the owner-operator to require the latter to make an accounting of the wages paid his drivers. The plaintiff company having neither the duty nor authority of paying the drivers of these vehicles, maintained no record of their employment in its offices, and hence the Collector of Internal Revenue had no means of arriving at an exact basis for levying the tax. The plaintiff company had collected no part of the tax chargeable against the drivers, because it had no right nor authority to do so. The relationship of employer and employee did not exist between the plaintiff company and the drivers of these vehicles.

The following cases have considerable bearing on the conclusion arrived at by the Court: Texas Co. v. Higgins, 118 F.2d 636, a decision by the Circuit Court of Appeals for the Second Circuit; Williams v. United States, 126 F.2d 129, a decision by the Circuit Court of Appeals for the Seventh Circuit; Indian Refining Co. v. Dallman, full opinion by the District Court, Southern District of Illinois, 31 F.Supp. 455, affirmed and opinion of the District Court adopted by reference in 119 F.2d 417, Circuit Court of Appeals, Seventh Circuit; State ex rel. Herbert v. Commercial Motor Freight, Com.Pl., 11 Ohio Supp. 31, motion to certify in the Supreme Court of Ohio overruled.

The defendant places great reliance on the case of Western Express Co. v. Smeltzer, 88 F.2d 94, 112 A.L.R. 74, which is a decision by the Circuit Court of Appeals for the Sixth Circuit. However, we are here seeking to determine whether an employer-employee relationship existed for the purpose of determining the tax liability under the Social Security Act, and not whether a record presents substantial evidence to support a jury's finding that a driver or an owner-operator was an employee and a servant of an appellant who has been sued in a tort action for personal injuries.

It has been a very difficult matter for legislative bodies to fully and correctly define an employer-employee relationship. It has been difficult too for the Courts to promulgate a full and effective definition. The cases, and they are very recent ones, appear very correctly to resign themselves to a common sense definition of the employer-employee relationship. It should be defined in its ordinary sense and given an ordinary interpretation. In the case before us, it seems that this approach should suffice, having in view the definition promulgated by Regulation No. 91, which is a part of the record. I am somewhat further impressed by the definition of an "employer", which is found in the so-called "Pay as you go" income tax law recently passed by the 78th Congress "to provide for the current payment of the individual income tax, and for other purposes", which is found in "Federal Code Annotated Current Service", special issue, June, 1943, at page 121 (26 U.S.C.A. Int.Rev.Code, § 1621 (d):

"The term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

"(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' * * * means the person having control of the payment of such wages; * * *."

The plaintiff may have judgment against the defendant, United States of America, for the sum of $7,504.54, with interest from June 24, 1941.

In case No. 4515, the case of Midwest Haulers, Inc., et al., Plaintiffs, v. James A. Brady, et al., Defendants, the plaintiff, on February 23, 1943, filed its motion, setting forth that that case, as well as case No. 4547, being Mutual Trucking Company Plaintiff, v. James A. Brady et al., Defendants, and case No. 4840, the instant case, Mutual Trucking Company, Plaintiff, v. United States of America, Defendant, all involve common questions of law and fact, and plaintiff moved the Court for an order consolidating said causes for joint hearing on all matters in issue in said actions.

On April 28, 1943, the Court passed on said motion as follows: "In view of the stipulation entered into by Counsel at the pre trial hearing, to the effect that the decision in case 4840 would be determinative of all three cases, the motion to consolidate is overruled."

I here repeat that, in view of the stipulation entered into by Counsel at the pre trial hearing, the decision in this case, No. 4840, should be determinative of the issue set up in cases Nos. 4515 and 4547.

The plaintiff may, within ten (10) days, prepare and file findings of fact and conclusions of law, drawn in accordance with this memorandum opinion, and the defendant may, within ten (10) days thereafter, file its objections and exceptions to the same.