**STANDARD OIL CO. v. GLENN, Collector of Internal Revenue.**

No. 42.

District Court, W. D. Kentucky, Louisville Division.

Nov. 11, 1943.

Charles G. Middleton and Bullitt & Middleton, all of Louisville, Ky., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Dist. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

The plaintiff, Standard Oil Company, filed this action to recover from the defendant, Seldon R. Glenn, Collector of Internal Revenue for Kentucky, taxes alleged to have been erroneously assessed and collected from the plaintiff for the years 1937, 1938, 1939 and a portion of 1940 under Subchapters VIII and IX of the Social Security Act, 42 U.S.C.A. §§ 1004 and 1101. The question presented is whether certain persons engaged in operating the bulk distributing plants of the plaintiff were engaged in employment as its employees within the meaning of the provisions of the Act. The complaint as originally filed sought recovery not only of taxes paid by the plaintiff from its own funds, but also money withheld by it of the wages of its agents and money withheld by it from the wages of the employees of its agents. That portion of the complaint seeking recovery of money withheld from the wages of its agents and its employees has been dismissed by the plaintiff following an unofficial verbal agreement between the plaintiff and the Commissioner to handle such payments by proper bookkeeping entries if it should be determined in this action that such taxes were erroneously assessed and collected from the plaintiff.

The plaintiff is a Kentucky corporation with its chief office in Louisville, Kentucky, and doing business in the states of Kentucky, Alabama, Florida, Georgia and Mississippi. It is engaged in the general business of marketing petroleum products, tires, tubes, batteries and certain automobile accessories. In the early days of its existence most of the distribution of its products was through wholesale grocers. Later the Company established distributing points with employees in charge on a salary basis. In many instances, before the passage of the Social Security Act, due largely to increased competition, the Company changed this method of distribution by appointing commission agents in charge of its bulk distributing plants in various cities and towns in the State in which it operated. Such agents were well known in the local community with good reputations and usually with substantial business interests in other lines of endeavor. During the years in question there were approximately 490 such commission agents operating under contracts with the plaintiff company. In such instances the plaintiff entered into a written contract with such an agent, subject to immediate cancellation by either party under which the agent agreed to act for the plaintiff in the sale of the Company's products on a commission basis in the area prescribed, and for no other purpose, and to receive as his entire compensation for said services a commission at the specified rate upon the products of the plaintiff company which he sold. The real estate on which the distributing plant was located, and the tanks thereon, were owned by the plaintiff. The station carried the name of the plaintiff. The products delivered to the agent were also the property of the plaintiff for which the agent was required to account at regular intervals by inventory reports. Cash receipts were deposited daily by the agent in the local bank in the name of the plaintiff, and the agent's commission upon the sales made would be sent to him later at regular intervals by the plaintiff. Certain customers approved by the plaintiff could buy on credit. Some agents, however, sold to other customers on credit and assumed the liability for failure on the part of such customers to pay in full for the products received. The agents were required to purchase and own their own delivery truck chassis upon which the plaintiff placed its own tank with its name painted thereon. In some instances the telephone at the distributing plant was listed in the name of the plaintiff; in other instances it was listed in the name of the agent. In some instances the plaintiff paid the charges for the telephone, heat, gas and water; in other instances it did not. The plaintiff paid the license and ad valorem taxes. The agent purchased at his own expense such office equipment and trucks as in his opinion was necessary to satisfactorily operate the business, and also employed and paid such truck drivers and employees as he needed to operate the business. The employees in most instances wore uniforms purchased from the plaintiff, which had the wording "Standard Oil" upon them. The plaintiff was not consulted by the agents with respect to such employees and its approval was not necessary nor ob-

tained. The hours of work, vacation periods, compensation, the right to discharge, and rules respecting their employment were matters in the exclusive control of the commission agent without consultation with or approval from the plaintiff.

In most instances the commission agent advertised his business by radio, newspapers, calendars, or novelties at his own expense and controlled through leases to dealers retail outlets for the products in which he was dealing. The sale price for the products was fixed by the plaintiff to which the agents usually conformed, but at times when competition required it the agent would sell the products at a reduced price, taking the reduction out of the commission which he would be entitled to on the sale. The plaintiff furnished each agent with a rulebook detailing proper methods for the successful operation of the business, which rules in some instances were read and followed by the agents and their employees, while in other instances they were either not read or considered merely as advisory in character. The plaintiff also prepared and mailed to the commission agents at intervals circular letters dealing with the proper operation of the business and at various times held sale conferences which the agents in that territory were requested to attend. In most instances the agents attended such conferences, but in some instances they did not, without any disciplinary action on the part of the plaintiff following. About twice a year an auditor employed by the plaintiff would visit the station and inspect the operations and method of doing business, but such auditors gave no orders or instructions to the commission agents. The commission agents kept their own books at their own expense, which were their private property and which were retained by them when the contract relationship with the Company was terminated. The commission agent had an investment in the business usually amounting to from about $2,000 to $60,000, depending upon the size of the business and the population of the territory which it served. There was no requirement respecting the amount of time that the agent would give to the business, and in each instance such question was decided by the particular agent involved. Some agents gave most of the day to the work, while other agents would give the business general supervisory attention only, devoting not more than an hour or two, and in some instances less, to the work. Such agents spent most of their time in other gainful occupations. The plaintiff looked to the agent in each instance for a satisfactory volume of sales in the territory assigned to that agent, and as long as such results were satisfactory the contract relationship between the plaintiff and the commission agent was continued in existence. In many instances the agent also handled and sold at the distributing plant products which were in competition with those being distributed and sold by the plaintiff.

Under these facts the plaintiff contends that the commission agents were independent contractors and not employees covered by the Act. The Commissioner ruled that they were employees, as a result of which the taxes in question were paid under protest followed by filing of claims for refunds and the disallowance of such claims by the Commissioner.

■ The distinction between the relationship of independent contractor and the relationship of employer and employee was carefully considered by this Court in Kentucky Cottage Industries, Inc., v. Glenn, Collector, D.C., 39 F.Supp. 642, which was a case involving the recovery of taxes erroneously assessed under the same chapter of the Social Security Law as are herein involved. The Court held in that case that where one employs another to execute a piece of work and the one so employed has the right to select his own assistants and help, the employer having no control over the hands of the employee and no right to direct the manner in which the work should be done other than to require that it shall be completed in accordance with the specifications under which it is contracted to be done, the one so contracted with is an independent contractor and not subject to the provisions of the Act. It was also pointed out that the existence or absence of the power on the part of an employer to control the conduct of the employment by interrupting the work or changing the employee from one task to another task before the first task was completed was one of the most decisive elements to be considered. It was held in that case that the taxes were erroneously assessed and collected. The views expressed therein and the authorities referred to therein are just as applicable to

the present case. In addition, practically the identical question as now presented has also been considered by three different Circuit Courts of Appeals, and in each instance it has been held that the commission agents involved, operating under practically the same conditions as surrounded the commission agents in this case, were independent contractors rather than employees of the Oil Company. Practically every argument now advanced on behalf of the defendant herein was also urged upon the Courts in those three cases, and in each instance rejected by the Court considering the question. See Indian Refining Co. v. Dallman, Collector, D.C., 31 F.Supp. 455, affirmed in a per curiam opinion by the Circuit Court of Appeals for the 7th Circuit, 119 F.2d 417; Texas Co. v. Higgins, D.C., 32 F.Supp. 428, affirmed by the Circuit Court of Appeals for the 2nd Circuit, 118 F.2d 636; American Oil Company v. Fly, 5 Cir., 135 F.2d 491. In addition, the same question has been considered and decided adversely to the contentions of the defendant by the Court of last resort in both Kentucky and Mississippi. See Barnes v. Indian Refining Company, 280 Ky. 811, 134 S.W.2d 620; Texas Company v. Wheeless, 185 Miss. 799, 187 So. 880. The Circuit Court of Appeals for this Circuit has recently announced, in a case under the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., under different facts, principles which are applicable to the present issue, and which by analogy can be considered decisive against the contentions of the defendant in this action. See Walling v. Sanders 6 Cir., 136 F.2d 78. It accordingly seems unnecessary to review and discuss the arguments urged upon this Court at the present time, in that a full and complete discussion of such arguments and the answer to them can be found in the opinions referred to. Counsel for defendant has not referred the Court to any reported decision on similar facts in its favor. Accordingly, both on reason and authority this Court holds that the commission agents under consideration in this case were independent contractors and not subject to the provisions of the Act under which the tax was assessed and collected.

Counsel for the respective parties will tender within ten days formal findings of fact and conclusions of law, consistent with the views expressed herein, and with the actual payments made and not waived by the plaintiff, for consideration and entry by the Court. Counsel for plaintiff will also tender judgment for entry at the same time.