### UNITED STATES v. MUTUAL TRUCKING CO.

No. 9701.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1944.

Frederic G. Rita, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and Frederic G. Rita, all of Washington, D. C., Don C. Miller, of Cleveland, Ohio, and Gerald P. Openlander, of Toledo, Ohio, on the brief), for appellant.

Wilbur E. Benoy, of Columbus, Ohio (Wilbur E. Benoy and Arthur M. Sebastian, both of Columbus, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

In an action for refund of taxes, from which the present appeal is prosecuted, the District Court entered a judgment for $7,504.54 with interest.

In 1941 the Collector of Internal Revenue amended and supplemented the appellee's returns for taxation under Titles VIII and IX of the Social Security Act, Title 42, U. S.C., § 1001 et seq. and § 1101 et seq., 42 U.S.C.A. §§ 1001 et seq. and 1101 et seq.; the Federal Unemployment Tax Act, Title 26, U.S.C., § 1600 et seq., 26 U.S.C.A.Int. Rev. Code, § 1600 et seq. and the Federal Insurance Contributions Act Title 26, U.S. C., § 1400 et seq., 26 U.S.C.A. Int.Rev.Code, § 1400 et seq., and assessed additional taxes aggregating the amount of the judgment. The additional taxes were based upon a determination that the appellee during the year 1939, in addition to amounts previously reported, had paid taxable wages amounting to $204,090.30. This amount was one-third of the total paid by appellee during the period in question to certain so-called "owner-operators" who performed trucking transportation for it under contracts hereinafter described. Each of the statutes involved imposes a liability for taxes upon "every employer * * * with respect to having individuals in his employ." The District Court held that the appellee was not the employer of the owner-operators nor of various persons working under them, but that the owner-operators were independent contractors, and that the taxes, penalty and interest charged against appellee had been erroneously and illegally assessed.

The facts are undisputed. The appellee is a corporation organized under the laws

of the State of Illinois, having its principal place of business in Toledo, Ohio. During the entire period in question it contracted with certain owner-operators to do hauling for it in interstate commerce, under identical written contracts, which contained the following clause: "It is to be clearly understood and agreed, and it is the intention of the parties hereto, that Second Party [owner-operator] is a contractor only and is not the agent, employee or representative of First Party [appellee] for any purpose whatever." The contract also provided that the owner-operator should assume full responsibility for the payment of all state and federal taxes for unemployment insurance, old age pensions, or other social security laws as to all persons engaged in the performance of the contract.[1] This provision has been rigidly adhered to by both parties.

Since appellee and its corporate predecessors have been operating under similar contracts since prior to 1932, no question of tax evasion is involved. The owner-operators haul exclusively for the appellee, ordinarily using their own equipment which consists of a tractor and trailer, and being paid a flat rate for each trip, according to a printed schedule of which all owner-operators have notice in advance of the trip. The operation consists of the transfer of sealed and loaded trailers between the terminals of the Universal Car Loading and Distributing Company in Chicago, Milwaukee, Toledo and other important cities. Each owner-operator hires and discharges his drivers. The payment of the drivers, the cost of maintenance and repairs and the cost of operation are borne exclusively by the owner-operators. In compliance with the contract, individual insurance covering both property and tort liability is carried by the owner-operator. The equipment is marked usually "Operated for Mutual Trucking Company," but a number of trailers are marked only with the name of the owner-operator. The trucks carry plates secured from the Interstate Commerce Commission which are required by the rules of the Commission, and are applied for by the appellee, but each owner-operator secures his own state license plates and drivers' licenses. Each driver is compelled to carry an identification card which bears a statement that it must be returned when the bearer leaves "the Employ of the Company." The identification card was prepared and supplied not by the appellee, but by the insurance company interested in the operation. All drivers of trucks are required to register at stations maintained by appellee on the principal routes for the purpose of checking the time of the trip. No penalty is exacted by appellee if the shipment is delayed, but the appellee, in order to assist in prompt disposition of freight, requires that the drivers file a so-called "daily log" which indicates the number of driving hours and helps the appellee to know how far at a given time the load has progressed. The appellee has established a road patrol consisting of certain inspectors who drive on the routes in order

---

[1] "First Party hereby grants permission to Second Party, without charge or costs, as and when necessary and required, to use its certificates or permits for such hauling of freight as he may do for First Party, but for no other purpose whatever. All license tags, drivers' licenses, union fees or dues, fees assessed by municipal corporations, or other fees of any kind or character other than as herein provided, shall be paid and borne by said Second Party, and First Party shall have no responsibility whatever to Second Party, his drivers, helpers or employees for any fines, costs or expenses incurred by Second Party or any of his employees by reason of his or their failure to have proper markings on equipment, or by reason of any violation by second party or any of his employees, of any rule or order of the Bureau of Motor Carriers of the Interstate Commerce Commission, or any Public Utility Commission, or other authority of any state; and nothing in this contract shall be in any way construed to constitute Second Party or any of his agents or employees as the agent, employee or representative of First Party. Second Party also agrees that he will, at all times, comply with all laws, rules and/or regulations of the Bureau of Motor Carriers of the Interstate Commerce Commission, or any Public Utility Commission, or other authority of any state in and through which he may be operating under this contract with respect to workmen's compensation or other insurance for the benefit or protection of his employees, and that he will assume full responsibility for the payments of all State and Federal taxes for unemployment insurance, old age pensions, or other Social Security laws, as to all persons engaged in the performance of this contract, and further agrees to meet all requirements of regulations now or hereafter adopted or promulgated by legally constituted authority in respect thereto."

to check on the observance by the truck drivers of statutes and regulations of the various commissions. In case any violation of law or the regulations is observed, the patrol, instead of reporting the matter to the appellee, reports to the police or to the Operators' Safety Council, a voluntary committee of the owner-operators which meets regularly to consider and to deal with such violations. One of appellant's witnesses testified that this committee penalized one of his men for driving recklessly and in effect forced him to dicharge the driver.

■ In promulgating the regulations to implement Title VIII of the Social Security Act, the Commissioner of Internal Revenue stated that the employer-employee relationship generally exists "when the person for whom services are performed has the right to control and direct the individual who performs the services not only as to the result to be accomplished by the work, but also as to the details and means by which the result is accomplished. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee." The statute thus recognizes the common law definition of independent contract and excludes such relationship from the burden of the tax. American Oil Co. v. Fly, Collector, 5 Cir., 135 F.2d 491, 147 A. L.R. 824; Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; Texas Co. v. Higgins, 2 Cir., 118 F.2d 636; Indian Refining Co. v. Dallman, 7 Cir., 119 F. 2d 417, affirming D.C., 31 F.Supp. 455.

The District Court found that the appellee had no control over the drivers in any way inconsistent with the contract provisions. The Government maintains, however, that under the control exercised over the operation by appellee, the statutory relationship of employment exists. That this is not the universal construction by the tax authorities is shown by the fact that some ten owner-operators in the Chicago area and one owner-operator in Minnesota have paid the taxes covering their own driver employees, together with penalties, under the same statutes.

The contract clearly seeks to establish a relationship of independent contract. It specifically provides that it shall be governed by Ohio law. The Ohio decisions hold this relationship to be that of independent contract. Coviello v. Industrial Commission, 129 Ohio St. 589, 196 N.E. 661; Industrial Commission v. McAdow, 126 Ohio St. 198, 184 N.E. 759.

■ The Government contends that the findings of the District Court are supported by no evidence, claiming that the operation through dispatchers and highway inspectors employed by appellee and the requirement of drivers' reports, all are evidence of such control as to necessitate a finding that the employer-employee relationship exists. It stresses the circumstance that in order to secure the license plates which, under the rules of the Interstate Commerce Commission, were required to be attached to trucks in operation, the president of the appellee company was compelled to make application to the Interstate Commerce Commission and expressly to state that such plates were to be displayed on motor vehicles operated by and under the control, supervision and responsibility of the appellee. We do not consider this fact conclusive. The Interstate Commerce Commission recognizes operation of trucking companies through independent contract, and in its auditing department reports this class of business under the heading "Purchased Transportation." Since the Motor Carrier Act, now part II of the Interstate Commerce Act, Title 49, U.S.C., § 301 et seq., 49 U.S.C.A. § 301 et seq., covers "all vehicles operated by, for, or in the interest of any motor carrier irrespective of ownership or of contract, express or implied" Title 49, U.S.C., § 303(19), 49 U.S. C.A. § 303(19), the present operation, so far from being condemned, is valid under federal law. The use of the plates and the form of the application therefor is clearly explained by the necessity for complying with the regulations of the Interstate Commerce Commission.

■■ As opposed to this circumstance, the owner-operators select, discharge and pay their drivers. In the only case of penalization shown in the record, the penalty was suggested by the Operators' Safety Council and was enforced, not by the appellee, but by the owner-operator. Neither the drivers nor the owner-operators are under appellee's control with reference to the manner of their work. The important regulations which they observe grow out of and are imposed by the contract and the applic-

able statutes and regulations. The drivers follow the routes required by the commissions of the various states, but with some deviation, and in such case, "upon their own responsibility." It is significant that the appellee in these transactions usually does not know in advance what particular driver is to take the freight. This is cogent evidence upon the proposition that while the appellee instructs the owner-operators when and where to transport the freight carried, it does not instruct them how to transport it. While both the appellee and the owner-operators have an interest in the transportation, and the responsibility is divided between them, clearly there is not such control as to create the relationship of employment between the appellee and owner-operators or the drivers.

Congress might have provided that such a relationship should be considered an employment, but it has not done so. In fact the Senate rejected a House amendment which would have extended the coverage in the statute beyond the employment relationship. The House receded (Conference Report, August 4, 1939, to accompany House Resolution 6635, page 14), and the Act was passed with coverage limited to employees. Moreover, the recent definition in the Current Tax Payment Act of 1943 defines employer as follows:

"(d) Employer. The term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

"(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' * * * means the person having control of the payment of such wages * * *." 26 U.S.C. Int.Rev.Code, § 1621 (d), 26 U.S.C.A. Int.Rev.Code § 1621(d).

In this case concededly the owner-operators completely control payment of the wages.

These considerations require affirmance of the judgment. We have recently made a similar decision in Glenn, Collector, v. Beard, 6 Cir., 141 F.2d 376. Our conclusion is in accord with the great weight of authority both in federal and state decisions upon this question. Texas Co. v. Higgins, supra; Williams v. United States, 7 Cir., 126 F.2d 129; Robinson v. Baltimore & Ohio R. Co., 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849; Government Personnel Automobile Ass'n v. United States, 5 Cir., 124 F.2d 99. Cf. Midwest Haulers, Inc., v. Brady, 6 Cir., 128 F.2d 496, 499; Walling v. Sanders, 6 Cir., 136 F.2d 78, which construed a similar provision of the Fair Labor Standards Act, 29 U.S.C., § 201 et seq., 29 U.S.C.A. § 201 et seq.; State ex rel. Zone Cab Corp. v. Industrial Commission, 132 Ohio St. 156, 5 N.E.2d 477; Coviello v. Industrial Commission, supra; Gillum v. Industrial Commission, 141 Ohio St. 373, 48 N.E.2d 234.

Our decision in Western Express Co. v. Smeltzer, 88 F.2d 94, 112 A.L.R. 74, is not in conflict. While the operation there presented certain features similar to those presented here, the question was one of tort liability and not of contract relationship. No written agreement existed between the Western Express Company and the operator of the truck in the Smeltzer case. Here a contract, which is specific in every detail, has been meticulously followed by the parties, and expressly provides that the relationship is one of independent contract. Moreover, the control exercised by the carrier over the details of the operation in the Smeltzer case was more definite than in the instant case. There the drivers were subject to the call of the carrier while in Chicago, and the reports filed evidence a greater degree of control than the drivers' log used here. Explanation of delay was required to be given, and details of expense to be reported. No construction of a statute was involved, and the sole question was whether there was sufficient evidence of control to sustain a jury verdict in a court action. Obviously this is a question to be determined by canons of construction different from those used to determine the question of liability for tax under specific statutes.

We are confirmed in our conclusion by the fact that the tax is expressly required to be computed upon the total wages paid or payable by the employer. Title 42, U.S. C., §§ 1001, 1101, 42 U.S.C.A. §§ 1001, 1101; Title 26, U.S.C., §§ 1400, 1600, 26 U.S.C.A. Int.Rev.Code, §§ 1400, 1600. In this case the appellee paid no wages. The record shows in two instances what wages were paid by the owner-operator. It was testified that the driver received the union scale of two cents a mile. If all wages were paid by this scale they would not exceed twenty-one per cent of the full amount paid to the owner-operators by the appellee. However, the Collector, without any evi-

dence upon this question, determined that a third of the sum paid to the owner-operators constituted wages. This was an arbitrary and illegal determination. Presumably the wages may have varied as between the different owner-operators. As was persuasively said in an analogous decision of the Supreme Court of Ohio, "The undisputed facts in this case show the impossibility of determining premiums based upon a payroll when there is none, and there can be none in such a situation." Coviello v. Industrial Commission, supra [129 Ohio St. 589, 196 N.E. 663].

The judgment is affirmed.