## GULF OIL CORPORATION v. UNITED STATES.
### Civil Action No. 2444.

District Court, W. D. Pennsylvania.
Oct. 18, 1944.

Archie D. Gray and Walter C. Clemons, both of Houston, Tex., and H. Eastman Hackney, Reed, Smith, Shaw & McClay, and John D. McIntyre, all of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. `Atty., of Pittsburgh, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to Atty. Gen., for defendant.

McVICAR, District Judge.

This is an action to recover internal revenue taxes alleged to have been paid by plaintiff to an Internal Revenue Collector not in office when the action was brought. After hearing, the Court makes the following findings of fact and conclusions of law:

Findings of Fact.

1. Plaintiff is, and at all the times hereinafter mentioned was, a Pennsylvania corporation, having its principal office and place of business at Seventh Avenue and Grant Street, in the City of Pittsburgh, Pennsylvania.

2. This action is brought against the United States of America for the recovery of internal revenue taxes erroneously and illegally collected from the plaintiff by the Collector hereinafter mentioned. The taxes in question in this action were assessed and collected in part under Titles VIII and IX of the Social Security Act, approved August 14, 1935, 49 Stat. 639, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., and in part under Sections 1410 (Federal Insurance Contributions Act) and 1600 (Federal Unemployment Tax Act) of the Internal Revenue Code as amended, 53 Stat. 1, 26 U.S.C.A.Int.Rev.Code, §§ 1410 and 1600.

3. From a time prior to January 1, 1936 to June 16, 1941, William Driscoll was the duly appointed, qualified and acting Collector of Internal Revenue for the 23rd District of Pennsylvania, and all of the internal revenue taxes involved in this action were collected by said Driscoll as such Collector. Said Driscoll ceased to be such Collector on June 16, 1941, and is not now in office as such Collector.

4. The action arises under Section 24 (20) of the Judicial Code as amended, 28 U. S.C.A. § 41(20). The ground upon which the jurisdiction of this Court depends is that this is an action for the recovery of internal revenue taxes erroneously and illegally assessed and collected under the internal revenue laws, and paid to a Collector of Internal Revenue who is not in office as Collector of Internal Revenue at the time this action is commenced.

5. Prior to 1936, during the years from 1936 to 1939, inclusive, and since that time, plaintiff has been engaged in the business of producing and transporting crude oil and of refining crude oil into its various products. Plaintiff's petroleum products are widely known and are distributed and marketed in the states of Connecticut, Delaware, Florida, Georgia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, Virginia and West Virginia, and in the District of Columbia. In plaintiff's conduct of its distribution and sales activities, it maintained a large and completely integrated sales organization to distribute and market its petroleum products, in part, to the retail filling station trade and, in part, to the consumer trade; and in connection with this phase of its business, plaintiff had invested in bulk plants (land and buildings), retail filling stations (land and buildings) and dispensing equipment, during the year 1939, a sum exceeding $80,000,000, exclusive of the value of its products in the process of distribution and sale, and annually expended $3,000,000 in advertising and sales promotional matter.

6. From January 1, 1936 to and including December 31, 1939, plaintiff, for the purpose of distributing and selling its petroleum products, executed contracts with distributors on the forms set forth in Exhibit "A" attached to the complaint, which by reference thereto, is made a part hereof.

7. In the distributor contracts, aforesaid, plaintiff executed a contract with each distributor, in which it was stated that plaintiff "desires to arrange for the sale and distribution of petroleum products at ......and vicinity, and the said......has agreed to undertake the marketing of said Company's products in said territory, on commission." The contract was designated a "consignment contract", the plaintiff was designated as the "Consignor" therein and the distributor the "Consignee."

8. In said distributor contract, plaintiff and distributor agreed that plaintiff would furnish at......a warehouse of such size and with such facilities as it would consider requisite; that it would ship to the distributor such stocks of lubricating and illuminating oils, gasoline, greases and other petroleum products as the location may, in its judgment, justify; that it would

fix the prices at which said products were to be sold by the distributor; that the distributor would devote his best efforts to the sale and distribution of plaintiff's products in said territory; that he would have the use of the warehouse and would have charge of the stocks·of petroleum products; that he would make a statement on the last day of each month of sales and stocks on hand and that he would sell the plaintiff's products at the prices fixed by the plaintiff; that all sales should be made for cash, unless written authority for credit was given by plaintiff; that the distributor would make daily written statements of all sales and remit all moneys received by him as a result thereof; that plaintiff would render to distributor a written statement, showing sales during the preceding month and remit to him his net commissions at the rates agreed upon, to wit: "Kerosene......; Gasoline......; Lubricating Oils......; Greases......"; that all stocks shall remain the property of the plaintiff until sold; that the distributor shall have entire charge of the management and operation of said business. He shall pay all license fees, furnish all necessary equipment, drays, trucks, tank trucks, etc. He shall also furnish all his own helpers and employees; pay all expenses of conducting said business and that plaintiff shall not be responsible for the negligence of the distributor or his employees in conducting the business. It was agreed that the distributor and the employees of the distributor shall not be deemed to be employees of the plaintiff. It was further agreed that the distributor shall carry compensation and public liability insurance for himself and his employees. Plaintiff reserved the privilege of shipping goods in the hands of the distributor, the distributor to not receive any compensation on goods so shipped except the sum of 25¢ per barrel for drayage and clerical work. Plaintiff reserved the right to erect and maintain such signs on the property under contract with the distributor as it might deem necessary to advertise its products. The distributor was authorized to use the words "Distributor, Gulf Oil Products" on its stationery, etc. Distributor agreed he would not represent himself as an agent or employee of the plaintiff. It was further agreed that the contract is not assignable and may be terminated by either party on ten days written notice. Upon such termination, distributor shall deliver to plaintiff possession of the warehouse and facilities, together with all stocks on hand and that a prompt settlement shall be made with the other, in full, of whatever may be found due and owing.

9. The provisions of the aforesaid contract were performed by the plaintiff and by its distributors.

10. The number of distributors between January 1, 1936 and December 31, 1939, varied from 676 to 706. The plaintiff furnished each distributor with a bulk plant consisting of a warehouse, steel storage tanks and occasionally, a garage. These bulk plants were owned either by the plaintiff, the distributor or a third party, and in most cases, were under the control of the plaintiff. The employees of each distributor were hired and discharged and their compensation was fixed by the distributor. Every distributor determined the hours of labor of his employees, their vacations and compensation. He controlled and directed their method and manner of working, in detail; fixed the time for opening and closing of the plant. The distributor and his employees, alone, had the keys to the bulk plant. Many of the distributors were men of good financial standing, who, in addition to performing their duties under the distributor contract, were engaged in other businesses entirely separate and apart from their business as distributors, and had employees who worked for them, partly in the business of the distributor and partly in other kinds of work in which the distributor was engaged. The distributor, in every instance, furnished the necessary trucks, including tanks, office equipment and all other equipment designed and used in dispensing petroleum products. The cost of this equipment, as well as the maintenance thereof, was borne by the distributor; all trucks and vehicles used by the distributor were registered and licensed by the distributor in his own name, and all taxes were paid by him. The entire operating expense of the distributor's business was borne by the distributor except that plaintiff paid occupational and privilege taxes imposed by governmental agencies for the operation of wholesale bulk plants. The distributor paid all utility services such as telephone, heat, light and water. Plaintiff has certain salesmen and inspectors who visit the distributors from time to time. Plaintiff's inspectors check the stocks in possession of the distributors. Plaintiff's salesmen occasionally assist the distributor

in making sales. The plaintiff, for this purpose, has a division office and a Pittsburgh office from which it sends out such employees. Each distributor, during the aforesaid time, had capital investments ranging from $3,000 to $255,000 in such business. The average investment of the distributors in each of the six divisions of the plaintiff were approximately as follows: Atlanta Division—$23,766.87; Boston Division—$30,095.65; Houston Division—$7,366.48; New York Division—$41,736.84; Philadelphia Division—$39,753.27; and Pittsburgh Division—$36,729.09.

11. Prior to the ruling of the Commissioner of Internal Revenue that the distributor and his employees were employees of plaintiff, for the purpose of the Social Security Act, many such distributors paid this tax to the Collector of Internal Revenue. Some have continued to do so since the aforesaid ruling.

12. Plaintiff has several employee benefit plans such as its incentive Bonus Plan, Pension Plan, Group Insurance Plan, Military Plan and a plan whereby employees of plaintiff could obtain a discount on the purchase of plaintiff's products. Neither the distributor nor his employees participated in or received any such benefits. Plaintiff required each of its employees to execute a written contract and submit to a physical examination, whereas neither the distributor nor his employees ever executed such a contract or submitted to such physical examination.

13. The gross earnings of the distributor depended upon his territory, efforts at solicitation and selling and varied from a minimum of about $1353.00 annually to a maximum of $287,670.33.

14. Many of the distributors did local advertising in their own names and at their own expense, and in many instances, printed their own letterheads and stationery. They carried insurance of various kinds on their equipment at their own expense and in such amounts and with such companies as they selected.

15. Under the rulings of the Commissioner of Internal Revenue the defendant demanded and received from plaintiff, under Title VIII of the Social Security Act, the aggregate amount of $44,018.87, and under Title IX the sum of $42,974.39 for the years 1936, 1937, 1938 and 1939. The entire sum of $86,993.25 was paid under protest by plaintiff to defendant, and was paid solely to comply with the rulings of the Commissioner that distributors and their employees were employees of plaintiff and said sum represented employer and employee taxes. Plaintiff also filed claims for refund for each of said payments within the time allowed by law, but said claims for refund, under Title VIII and also under Title IX, were not acted upon by the Commissioner within six months from the date of filing thereof. No part of the amount sued for herein has been refunded to plaintiff by defendant and no part of the sums sued for has been charged back to or paid by the distributors or their employees.

### Conclusions of Law.

I. The distributors and their employees were not employees of the plaintiff from January 1, 1936 to December 1, 1939, inclusive, under Titles VIII and IX of the Social Security Act, approved August 14, 1935 (49 Stat. 639), and in part under Sections 1410 (Federal Insurance Contributions Act) and 1600 (Federal Unemployment Tax Act) of the Internal Revenue Code as amended, 53 Stat. 1, 26 U.S.C.A. Int.Rev.Code, §§ 1410 and 1600.

II. All of the payments made by the plaintiff were made under protest. Claims for refund were filed within the time prescribed by law and have not been acted upon by the Commissioner of Internal Revenue.

III. Plaintiff has paid to the defendant the sum of $44,018.87 under Title VIII, and the sum of $42,974.39 under Title IX. Plaintiff is entitled to recover these amounts, with interest from the date of the various payments.

### Opinion.

This is an action to recover internal revenue taxes alleged to have been erroneously and illegally collected from the plaintiff by the Collector of Internal Revenue. The taxes in question in this action were assessed and collected, in part, under Titles VIII and IX of the Social Security Act, approved August 14, 1935, 49 Stat. 639, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., and in part, under Sections 1410 (Federal Insurance Contributions Act) and 1600 (Federal Unemployment Tax Act) of the Internal Revenue Code as amended, 53 Stat. 1, 26 U.S.C.A.Int.Rev.Code, §§ 1410 and 1600.

The facts are fully set forth in the foregoing findings of fact. The question in-

volved is whether the distributors and their employees were employees of the plaintiff from January 1, 1936 to December 31, 1939, inclusive, under the Acts aforesaid. The plaintiff contends that they were not such employees; the defendant contends that they were.

The regulations duly made under the Social Security Act cover the subject of employment and are to be found in regulations 90 and 91. In regulation 91 it is provided:

"Every individual is an employee within the meaning of Title VIII of the Act if he performs services in an employment as defined in section 811(b) (see article 2).

"However, the relationship between the person for whom such services are performed and the individual who performs such services must as to those services be the legal relationship of employer and employee. Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important fact indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishings of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor."

All of the adjudicated cases which involve the same question, or substantially the same, have been decided in favor of plaintiff's contention. See American Oil Co. v. Fly, 5 Cir., 135 F.2d 491, 147 A.L.R. 824; Indian Refg. Co. v. Dallman, D.C.Ill., 31 F.Supp. 455; Id., 7 Cir., 119 F.2d 417; Orange State Oil Co. v. Fahs, D.C. Fla., 52 F.Supp. 509; Id., 5 Cir., 138 F.2d 743; Standard Oil Co. v. Glenn, D.C.Ky., 52 F.Supp. 755; Texas Co. v. Higgins, D.C.N.Y., 32 F.Supp. 428; Id., 2 Cir., 118 F.2d 636; American Oil Co. v. Wheeless, 185 Miss. 521, 187 So. 889; Barnes v. Indian Refining Co., 280 Ky. 811, 134 S.W. 2d 620; Texas Co. v. Bryant, 178 Tenn. 1, 152 S.W.2d 627; Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880; Williams v. United States, 7 Cir., 126 F.2d 129; Anglim v. Empire Star Mines Co., 9 Cir., 129 F.2d 914; United States v. Mutual Trucking Co., D.C., 51 F.Supp. 114; Id., 6 Cir., 141 F.2d 655.

The distributors in this action were men of good financial standing. Many of them were engaged in other lines of business. They had a substantial financial investment under their contracts with plaintiff. They had complete control of the sale of petroleum products under their contracts with the plaintiff. They had the right to employ and discharge such employees as they desired to employ. They, in other words, were in control of the distribution of petroleum products, by wholesale, in the territory described in their contracts. These and the other facts before recited, make such distributors and their employees independent of the plaintiff and not employees thereof.

Defendant argues that this action is ruled in principle by the decision in National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, and other similar cases. In that case, the meaning of the term "employee" in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., was held to be determined, not exclusively by reference to common law standards, local law or legal classifications made for other purposes, but with regard also to the history, context and purposes of the Act and to the economic facts of the particular relationship. The facts of that case and the law involved therein are substantially different from the facts of the present action and the law applicable thereto. I am of the opinion that this action is covered by the aforesaid regulations and by the principles of law laid down in the aforesaid cases.

Let an order for judgment be prepared in accordance with the foregoing findings of fact, conclusions of law and this opinion.