**UNITED INSURANCE COMPANY OF AMERICA, a corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 13500.**

United States Court of Appeals Seventh Circuit.

June 12, 1962.

As Amended July 2, 1962.

---

Bernard G. Segal, Philadelphia, Pa., Edward B. McGuinn, Teschke, Burns, Maloney & McGuinn, Chicago, Ill., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Almore H. Teschke, Chicago, Ill., Irving R. Segal, Samuel D. Slade, Philadelphia, Pa., for petitioner.

Isaac N. Groner, Washington, D. C., for amicus curiae.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Marion L. Griffin, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Samuel M. Singer, Atty., National Labor Relations Board, Washington, D. C., for respondent.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

DUFFY, Circuit Judge.

Petitioner (United) seeks to review a decision and order of the National Labor Relations Board (Board) dated August 10, 1961. The Board has filed a cross-petition for enforcement of that order.

This case is here for the second time. On the first occasion, we set aside the Board's order (272 F.2d 446), holding the Board had not afforded United procedural due process. We remanded the case "for a full hearing and decision based upon a consideration of all relevant evidence."

The decision and order of the Board here challenged requires United to bargain collectively with Insurance Workers' International Union, AFL-CIO, (IWIU) as the collective bargaining agent for the licensed debit agents who serve United in the State of Pennsylvania. The principal issue is whether these licensed

debit agents are independent contractors or employees of United.

In 1953, Local 5, Insurance Workers of America, CIO, filed a petition for certification with the Board. About one month later, Insurance Agents' International Union, AFL, filed a petition also seeking certification. These petitions were later voluntarily dismissed and withdrawn respectively. About two and a half years later, Insurance Agents' International Union, AFL-CIO, petitioned for certification. An agreement was entered into by this Union and United for a consent election with the specific understanding that United would not waive its position that the debit agents were independent contractors.

An election and a re-run election were held, and the Insurance Agents' International Union, AFL-CIO, won and was certified. United refused to bargain, claiming that it was under no obligation to bargain with the Union because the debit agents were not its employees but were independent contractors.

United issues commercial and industrial life, health and accident, and hospitalization insurance policies. Under Pennsylvania law, Industrial Life Insurance Policies of less than $1000 are sold on a weekly premium basis. The debit agents are engaged primarily in selling and collecting premiums on industrial life insurance policies issued by United. However, at times, they do collect premiums on other types of insurance policies issued by United.

In our previous opinion, we observed that in many respects a debit agent has the attributes of an independent contractor, and we listed some of them. We also said that there are some aspects of the duties of debit agents which might indicate their status is that of employees of United. In view of our disposition of the first appeal, we did not reach the issue of whether the licensed debit agents are independent contractors or employees.

On February 8, 1960, the Board reopened the record and remanded the case to the trial examiner "for the purpose of receiving additional evidence consistent with the Court's remand." A hearing was scheduled.

Prior to the hearing date, United moved to transfer the proceedings to the representation docket, principally on the ground that three years had elapsed since the Insurance Agents' International Union (IAIU) had been certified in a close election. United claimed that the disposition of the matter in a representative proceeding would be appropriate to determine both the jurisdictional employee status issue and the current representative status of the certified Union. The motion was referred to the trial examiner and was denied.

On March 25, 1960, three days before the scheduled hearing, counsel who had represented Insurance Agents' International Union disclosed to United's counsel that the certified Union was no longer in existence. It was finally disclosed that in early 1959, prior to the time this case was first presented to this Court, the Insurance Agents' International Union had merged with the Insurance Workers of America and a new union had been formed known as the Insurance Workers' International Union, AFL-CIO, (IWIU). United then renewed its effort to have the case transferred to the representation docket. The Board denied United's request for leave to appeal the examiner's ruling denying the motion to transfer.

In the 1957 hearing, the Board declined to receive or consider the testimony of one Jack Borman which was offered by United. Counsel for United then made an extensive offer of proof. Borman operates a large enterprise which sells and services insurance policies for United in Pennsylvania. It has acted in such capacity for a considerable period of time. It is and has been subject substantially to the same instructions, report requirements and other procedures in its relationship with United as are the debit agents involved in this proceeding. The purpose of the testimony was to demonstrate that the so-called "controls" relied upon by the Board as showing the agents to be employees, applied equally to the

Borman enterprise, which no one contended made them employees of United.

At the new hearing, there was no new evidence on the basic question of employee status. The parties stipulated that the record in the prior proceeding should be considered a part of the record in the current proceeding. United again offered the testimony of Mr. Jack Borman, but it was again excluded by the examiner on the same basis as in the prior proceeding. The parties stipulated that if the Board found the exclusion of Borman's testimony to be error, United's offer of proof would be accepted as the entire testimony of Mr. Borman.

In his Supplemental Intermediate Report of July 29, 1960, the trial examiner recommended the Board dismiss the complaint against United because the certified Union which had filed the complaint in 1957 no longer existed, and that IWIU which purported to replace IAIU was not a certified representative of United's debit agents in Pennsylvania.

On September 28, 1960, the Regional Director issued a decision and order amending the 1957 certification by substituting IWIU for IAIU. United's request for leave to appeal this order was denied. On December 6, 1960, the Board issued a decision and order granting IAIU's motion to amend the name of the charging party to IWIU.

On March 24, 1961, the trial examiner filed a Second Supplemental Intermediate Report concluding that United's debit agents were employees, and recommended the Board reissue the order originally issued in this case on January 14, 1959, except that the Insurance Workers' International Union, AFL-CIO, should be substituted for Insurance Agents' International Union, AFL-CIO. On August 10, 1961, the Board adopted the trial examiner's findings, conclusions and recommendations.

In 1947, Congress amended the National Labor Relations Act so as to prohibit the National Labor Relations Board from assuming jurisdiction over independent contractors.[1] It is conceded the amendment was intended by Congress to nullify the Supreme Court ruling in N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170.[2]

In National Van Lines, Inc. v. N.L.R.B., 7 Cir., 273 F.2d 402, 404–405, we quoted from a previous decision of this Court, N. L. R. B. v. Phoenix Mutual Life Insurance Company, 7 Cir., 167 F.2d 983, at 986: " * * * This court there pointed out that the employer-employee relationship exists when the person for whom the work is done has the right to control and direct the work, not only as to the result accomplished by the work, but also as to the details and means by which that result is accomplished, and that it is the right and not the exercise of control which is the determining element. * * * "

Thus, since 1947, the critical distinction between employees and independent contractors under the Act is the right to control the manner and means by which the agent conducts his business. In determining whether the requisite control of manner or means is present, various tests have been employed.

Consideration is given to such items as the right to hire and discharge; the method of payment; who furnishes the tools and materials used; who designates the time and place for the work to be done; and the intention of the parties. Usually, no one of these categories is de-

1. Sec. 2(3), 29 U.S.C.A. § 152(3).

2. See N. L. R. B. v. Steinberg, et al., 5 Cir., 182 F.2d 850, 854–855, which discussed the legislative purpose The House Committee Report reads, in part, as follows: "An 'employee', according to all standard dictionaries, according to the law as the courts have stated it, and according to the understanding of almost everyone, with the exception of members of the National Labor Relations Board, means someone who works for another for hire. But in the case of National Labor Relations Board v. Hearst Publications, Inc., 1944, 322 U.S. 111, [64 S.Ct. 851, 88 L.Ed. 1170], the Board expanded the definition of the term 'employee' beyond anything it had ever included before, and the Supreme Court relying on the theoretical 'expertness' of the Board, upheld the Board. * * * "

cisive. The conclusion must be based on the "total situation" looking at all of the facts in the particular case. National Van Lines v. N. L. R. B., 7 Cir., 273 F.2d 402, 407.

■ We hold the debit agents are independent contractors. A debit agent is "on his own." He sets his own hours of work and work days and makes his own arrangements with policy holders respecting frequency of premium payments. As admitted by the trial examiner, the agent pays his own travel expense, rent, postage, telephone, bond expense and salaries of assistants; he may take holidays when he desires without notice to United. Agents may transfer policies among themselves and are not required to do so by United. An agent retains his own commission from collected premiums. As to selling insurance, the agent " * * * is free to follow the superintendent's suggestion or to devise his own methods."

■ The examiner listed certain categories which he said indicate the relationship of employer and employee existed. He considered significant that each agent was assigned to the staff of a particular superintendent, and that certain reports are made by the agents.

When United needs a new agent, he is given a debit within the territory of a particular office. To the extent permitted by insurance laws, an agent is free to choose any of these centers and usually selects one which is geographically convenient although other factors may be significant to him. But no agent may be transferred except at his own request, and he may sell and service policies anywhere in the state.

There is nothing under this heading which shows United has taken from the agent his freedom of choice of manner and means. The reports mentioned by the examiner are no more significant than would be the situation where a manufacturer requires reports from its manufacturers' representative.

Another reason listed by the examiner for his conclusion is his claim that United assists its agents in their functions; that superintendents accompany new agents on their rounds and that sales meetings are held.

United does offer assistance to its agents but only to those who desire to receive same. Sales meetings are conducted but attendance is entirely voluntary. Some agents never attend such meetings. We think there is nothing in such practice inconsistent with an independent contractor relationship.

The examiner thought it significant that United makes group insurance plans available to groups of persons including its agents. Here the agents pay the full cost of the plan. Many organizations provide group insurance plans. The American Bar Association has a group insurance plan, but it is obvious that because thereof, the relationship between the ABA and its members does not thereby become one of employer and employee.

The examiner relied upon the fact that rate manuals were owned by United. We think this is of no significance. Rate manuals in the insurance business are like a price list. A salesman must know the price of what he sells.

The examiner discussed other reasons and categories. It would unduly extend this opinion to discuss each in detail. Suffice it to say, we have carefully considered each of the items and categories mentioned, but we are convinced they do not show, in connection with all the other facts and circumstances, that an employer-employee relationship existed.

There are many businesses, and the sale of insurance is one of them, where management may make a choice as to the manner in which the business will be conducted. Very often, perhaps traditionally, insurance has been sold through insurance salesmen whose "tools" are their own initiative and personality and who work on their own time and at their own expense. However, some insurance companies have established an employer-employee relationship such as the company in N. L. R. B. v. Phoenix Mutual Life Insurance Company, supra.

In the instant case, United has chosen to operate its business on the basis that its agents are independent contractors and, of course, it had the complete legal right so to do.

Other questions have been argued by the petitioner and the Board. However, as we have decided the fundamental and underlying question in this case, a decision on the other points need not be reached.

The petition for review is granted, and the cross-petition for enforcement of the order is denied.