SITE OIL COMPANY OF MISSOURI, Site Oil Company of Michigan, Inc., and William Vaughn, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 17130.

United States Court of Appeals Eighth Circuit.

June 24, 1963.

Richard Marx, St. Louis, Mo., for petitioners; Murray Steinberg and Charles Kopman, St. Louis, Mo., with him on the brief.

Warren M. Davison, Atty., N. L. R. B., Washington, D. C., for respondent; Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allen M. Hutter, Atty., N. L. R. B., Washington, D. C., with him on the brief.

Before SANBORN and BLACKMUN, Circuit Judges, and STEPHENSON, District Judge.

SANBORN, Circuit Judge.

This case is before this Court under § 10(f) and (e) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(f) and (e), upon a petition of the Site Oil Company of Missouri and its wholly owned subsidiary, Site Oil Company of Michigan, Inc. (herein referred to in the singular as "Site"), which are engaged in the acquisition and distribution of petroleum products and the operation of gasoline service stations, and William Vaughn, a company supervisor and former lessee, to review and set aside an order of the National Labor Relations Board based upon its conclusion that Site, the principal office of which is at Clayton, Missouri, was the employer of the lessees of a new gasoline service station constructed and owned by Site in the City of Detroit, Michigan. This conclusion, from which two Board members dissented, was based upon the Board's determination that, under the evidence adduced before its Trial Examiner, Site was the operator of the station and the employer of the lessees and of the station attendants hired by the lessees. Site denies that it was the employer of its lessees, denies that the finding of the Board to that effect is sustained by substantial evidence, and asserts that the lessees were, under the evidence, independent contractors who were alone responsible for their relations with the station attendants they employed to assist in operating the service station. The Board has cross-petitioned for enforcement of its order, which, together with its decision, is reported in 137 N. L.R.B. 1274. The decision speaks for itself.

The evidentiary facts are virtually undisputed. The Board in its decision, in stating them and in defining the issue presented says (pages 1274–1275 of 137 N.L.R.B.):

"Site Oil Company, referred to herein as Site, constructed a gasoline service station on West 8 Mile Road in Detroit, Michigan, in August 1960. On August 10 [William] Vaughn, until then a supervisor of Site, began operating the station as a lessee. On August 13, four of the five attendants employed at the sta-

tion signed union authorization cards on behalf of Local 299, Teamsters [International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Ind.], and on August 17 the Union claimed majority representation and requested a meeting for negotiation of a contract. On August 20, Vaughn voluntarily terminated his lease with Site, and Baron Herman, who had not been previously associated with Site, began operating the station under a lease agreement similar to Vaughn's. Herman refused to rehire one of the station attendants, discharged three others, and hired replacements for them.

"The Board agrees with the Trial Examiner's finding that the discharge of these employees violated the Act [National Labor Relations Act, as amended] and that there was a refusal to bargain in violation of Section 8(a) (5), if the individual lessee operators were not independent contractors. The paramount issue for which the Board granted oral argument was, therefore, the status of the lessee operators. In determining the status of persons alleged to be independent contractors, the Act requires the application of the 'right of control' test. Where the person for whom the services are performed retains the right to control the means by which the result is to be accomplished, the relationship is one of employment; but where control is reserved only as to the result sought, the relationship is that of independent contractor. The resolution of this question depends on the facts of each case, and any one factor alone is not determinative.

"Site owned the gasoline station and equipment which it leased to the lessees for an indefinite period, subject to termination upon 30 days' notice by either party. The lease also gave Site the additional option of terminating the lease upon 24 hours' notice if the station was being operated contrary to its terms. The lease required the lessee to devote full time to operating the station and to accept no outside work. The lessee obligated himself to pay a rental of 1 cent per gallon for all gasoline sold; to accept all products delivered by Site on a consignment basis; to keep inventory of all merchandise on hand; to make a daily sales report on Site forms; and to remit daily on all sales of Site products. Other provisions of the lease required the station to be open 24 hours a day and for attendants to wear standard Site uniforms; that the lessee would not sell any other products without the written approval of Site; and that Site would set both the wholesale and retail prices for its gasoline and oil products.

"Herman's operation of the station conformed to the requirements of the lease. Title to the inventory and supplies remained with Site. He submitted a daily report to Site and deposited a part of the receipts, in payment of his account, to the credit of Site in a local bank. He submitted a weekly inventory report to Site at which time the necessary adjustments in amounts due were computed. Herman also sold a number of items such as cigarettes, packaged coal and wood, and auto accessories. He also owned certain small tools which were used at the station. Site paid all utilities and the cost of a business license while Herman paid the sales tax on all items except gasoline and oil. Herman sold the gasoline at the prices established by Site but was in fact permitted to sell oil at prices which he himself determined. The only identification at the station was that of Site."

Board members Leedom and Rodgers, in their dissenting opinion, said that the majority had taken too limited a view of the applicable test and had misapplied it, and that the "total picture re-

flects an independent contractor relationship." They expressed their views, in part, as follows (page 1279 of 137 N.L.R.B.):

"In assessing the total situation, we think it essential to allude to these additional facts, which we deem significant. Thus, it is clear that Site neither exercised nor purported to exercise control over the lessee's day-to-day operations, inasmuch as Site's district supervisor visited the station only once every two weeks, and then primarily for the purpose of taking orders for products and distributing promotional materials; and although Site may have been concerned with how the lessee's employees conducted themselves, the lessee was under no obligation to adhere to Site's suggestions as to service policy. In addition, it was the lessee, and not Site, who (1) paid the premiums for the fidelity bond and holdup insurance; (2) assumed any liabilities resulting from the operation of the station; (3) determined the personnel needs of the station, hired and discharged employees, and set the employees' wages and hours, all without consulting Site; and (4) paid Social Security taxes with respect to their employment. Finally, it was the lessee, and not Site, who ran the risk of operational losses and would benefit from operational profits. These are all elements signifying an independent contractor relationship.

"When the total situation, including the foregoing facts, is considered, the picture emerges of a station operator who, although subject to certain controls, was nevertheless free to exercise his independent operational judgment in the significant areas which would determine whether he made a profit or incurred a loss. The unit profit on gasoline and oil was controlled by Site. Otherwise, whether, and the extent to which, the station was operated at a profit or a loss, depended on the amount of capital which the lessee had to invest in additional income-producing items, and on the lessee's ability to minimize his operating costs and to maximize his sales of other products, as well as Site's."

The dissenting Board members regarded this case and that of Clark Oil & Refining Corporation, 129 N.L.R.B. 750,—which involved substantially the same problem but produced a different result—as indistinguishable, despite the view of the majority (three members of the Board) to the contrary.

The Clark case was tried by an Examiner who in his Intermediate Report had determined that the lessees from Clark were independent contractors and that neither they nor the station attendants were Clark's employees. The case was submitted for final decision to a panel of the Board consisting of members Leedom, Rodgers and Jenkins. The panel adopted the findings of the Trial Examiner, and, on his recommendation, dismissed the complaint.

In the Site case there was a different Trial Examiner, who reached the conclusion that the lessees of Site's service station and the station attendants they had employed were employees of Site, and that the lessees were not independent contractors. The Trial Examiner recommended that the unfair labor practices found to have been committed at the station be visited upon Site. The Board, by a majority vote, in which no member of the panel which decided the Clark case joined, adopted the findings, conclusions and recommendations of the Examiner.

The statement in the dissenting opinion that the Site decision "can only cause uncertainty in the application of the Act and will necessarily have an unsettling effect on a great number of long-established relationships," is readily understandable.

We think that, under the evidence in this case and for the reasons stated by the dissenting members of the Board,

the status of the lessees of Site certainly bore a much closer resemblance to that of independent contractors than to that of employees. Cf. American Oil Co. v. Fly, 5 Cir., 135 F.2d 491, 493, 147 A.L. R. 824; National Van Lines, Inc. v. N. L. R. B., 7 Cir., 273 F.2d 402, 403–405. Whether it can justifiably be held that the determination of the Board that Site was the employer of the Lessees and of their station attendants is without adequate evidentiary support and is therefore arbitrary and wrong as a matter of law, is not free from doubt. That the decision in this case is inconsistent with the decision in Clark, furnishes, of course, no justifiable basis for setting aside the Board's order on review.

This Court has studiously tried to avoid encroaching upon the jurisdiction of the Board or usurping any of its powers or functions.

In N. L. R. B. v. Minnesota Mining & Manufacturing Co., 8 Cir., 179 F.2d 323, 325, we said:

> " * * * The limited scope of our power of review has often been repeated. That the Board is the sole judge of the facts, the credibility of witnesses, the weight of evidence, and the inferences to be drawn from circumstantial and conflicting evidence, is not open to question. Donnelly Garment Co. v. National Labor Relations Board, 8 Cir., 165 F.2d 940, 941 and cases cited. On review, this Court may not concern itself with the correctness of the Board's decision of questions of fact, Donnelly Garment Co. v. National Labor Relations Board, supra, page 942 of 165 F.2d; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701, affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251, but only with whether there is adequate evidence in the record to justify the Board's findings and order. The review of an order of the Board is in no sense a trial de novo nor even completely analogous to a review of a judgment of a trial court in a nonjury case. The

decision of the Board is like the verdict of a jury, which, on appeal, may be set aside only if unsupported by substantial evidence."

See, also, N. L. R. B. v. Cold Spring Granite Co., 8 Cir., 208 F.2d 163, 165, and N. L. R. B. v. Lee-Rowan Company, 8 Cir., 316 F.2d 209.

■ If the facts before the Board were such that all reasonable minds must honestly draw the conclusion that the status of the lessees was that of independent contractors, the question would, of course, become a question of law rather than one of fact.

■ It must be remembered that the possibility of drawing either of two inconsistent inferences from the evidence before the Board does not preclude it from drawing one of them, and "if the findings of the Board are supported by evidence the courts are not free to set them aside, even though the Board could have drawn different inferences." N. L. R. B. v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 107, 62 S.Ct. 960, 961, 86 L.Ed. 1305. See, also, Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

In United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, which arose under the Social Security Act in actions for the refund of social security taxes, the status of certain workers was in issue. Of the workers involved, unloaders of coal were held to be employees, and truckers to be independent contractors. The Supreme Court said (page 716 of 331 U.S., page 1469 of 67 S.Ct.):

> "Probably it is quite impossible to extract from the statute a rule of thumb to define the limits of the employer-employee relationship. The Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one

is controlling nor is the list complete. * * *"

There is no contention that the Board misconceived the test for determining the status of the lessees of Site. The contention is that the Board misapplied it, giving too much weight to certain factors and not enough to others, thereby producing a wrong result. The problem whether one who works for another is an employee or is an independent contractor is often not an easy one to solve. The solution depends upon the circumstances of the whole activity. Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772; United Insurance Co. of America v. N. L. R. B., 7 Cir., 304 F.2d 86, 89–90.

The Board, in support of its decision, cites, among other cases, N. L. R. B. v. Nu-Car Carriers, Inc., 3 Cir., 189 F.2d 756, cert. denied 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687, and N. L. R. B. v. Phoenix Mut. Life Ins. Co., 7 Cir., 167 F.2d 983, 6 A.L.R.2d 408, cert. denied 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395. In the Nu-Car case the Board had determined that certain truck drivers operating under an owner-operator plan were employees and not independent contractors. The Court of Appeals sustained the decision of the Board and ordered enforcement of its order. In the Phoenix Mut. Life Ins. Co. case, the Board determined that insurance salesmen were employees and not independent contractors. On review, the Court of Appeals held with the Board. In United Insurance Co. of America v. N. L. R. B., 7 Cir., 304 F.2d 86, the Board determined that licensed debit agents, who served United in Pennsylvania, were employees of that Company. The Court held that the agents were not employees, saying (page 91 of 304 F.2d): "In the instant case, United has chosen to operate its business on the basis that its agents are independent contractors and, of course, it had the complete legal right so to do." This Court, in Minnesota Milk Company v. N. L. R. B., 8 Cir., 314 F.2d 761, sustained a finding of the Board that a deliverer of milk, who claimed to be an independent contractor, was in fact an employee of the Milk Company. In Saiki v. United States, 8 Cir., 306 F.2d 642, in an action for the refund of employment taxes, which turned upon the question whether chick sexers were employees, as the Government claimed, or were independent contractors, as they contended, this Court ruled that the verdict of a jury determining that they were employees was without substantial evidentiary support and should be set aside. See also, and compare, N. L. R. B. v. Lindsay Newspapers, Inc., 5 Cir., 315 F.2d 709, 713–714, and N. L. R. B. v. Servette, Inc., 9 Cir., 313 F.2d 67. About all that the cases demonstrate is that the test for determining the status of workers is much easier to state than it is to apply, and that each case must stand or fall on its own peculiar facts. To attempt to reconcile the many cases dealing with the problem would be futile.

The duty of the Courts of Appeals when called upon to review orders of the National Labor Relations Board after the Act had been amended in 1947 by the Labor Management Relations Act (Taft-Hartley Act), 61 Stat. 136, 29 U.S.C. § 141 et seq., was considered by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The Court referred to the history of the National Labor Relations Act (Wagner Act) prior to its amendment in 1947, saying (page 477 of 340 U.S., page 459 of 71 S.Ct.):

"Want of certainty in judicial review of Labor Board decisions partly reflects the intractability of any formula to furnish definiteness of content for all the impalpable factors involved in judicial review. But in part doubts as to the nature of the reviewing power and uncertainties in its application derive from history, and to that extent an elucidation of this history may clear them away.

"The Wagner Act provided: 'The findings of the Board as to the facts,

if supported by evidence, shall be conclusive.' Act of July 5, 1935, § 10(e), 49 Stat. 449, 454, 29 U.S.C. § 160(e). This Court read 'evidence' to mean 'substantial evidence.' Washington, V[irginia] & M[aryland] Coach Co. v. [National] Labor [Relations] Board, 301 U.S. 142 [57 S.Ct. 648, 81 L.Ed. 965], and we said that '[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. [of New York] v. [National] Labor [Relations] Board, 305 U.S. 197, 229 [59 S.Ct. 206, 83 L.Ed. 126]. Accordingly, it 'must do more than create a suspicion of the existence of the fact to be established. * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [National] Labor [Relations] Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 [59 S.Ct. 501, 83 L.Ed. 660]."

Section 10(e) of the Act, as amended in 1947, 61 Stat. 147–148, 29 U.S.C. § 160(e), provides: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." The effect of this change in language upon judicial review of Labor Board decisions was discussed at length by the Supreme Court in the Universal Camera Corp. case, supra, 340 U.S. 474, 71 S.Ct. 456. We quote the following pertinent statements from the opinion in that case, although, no doubt, all that is said must be considered as a whole (pages 487–488, 490, 491 of 340 U.S., pages 463–464, 465, 466, of 71 S.Ct.):

"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement in both statutes that courts consider the whole record. Committee reports and the adoption in the Administrative Procedure Act of the minority views of the Attorney General's Committee demonstrate that to enjoin such a duty on the reviewing court was one of the important purposes of the movement which eventuated in that enactment.

"To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.

* * * * * *

"We conclude, therefore, that the Administrative Procedure Act and

the Taft-Hartley Act direct that Courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

\*    \*    \*    \*    \*    \*

"Our power to review the correctness of application of the present standard ought seldom to be called into action. Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied."

It should also be said that the Act prior to 1947 had not expressly excluded independent contractors from the definition of "employee", but was amended by the Labor Management Relations Act so as to provide: "The term 'employee' \* \* \* shall not include \* \* \* any individual having the status of an independent contractor \* \* \*." Sec. 2(3), 61 Stat. 137–138, 29 U.S.C. § 152(3).

The legislative history of the Labor Management Relations Act clearly shows that Congress was utterly opposed to having the National Labor Relations Board convert those who had always been understood to be independent contractors into employees. As Judge Borah said, N. L. R. B. v. Steinberg, 5 Cir., 182 F.2d 850, 854–855:

"\* \* \* However the legislative history of the Taft-Hartley Law, which was adopted in 1947 as an amendment to the National Labor Relations Act, shows quite clearly that when Congress passed the Labor Act it intended the word 'employee' to mean someone who works for another for hire and this clear expression of Congressional intent we are obligated to follow."

See, also: National Van Lines, Inc. v. N. L. R. B., supra, pages 403–405 of 273 F.2d; United Insurance Co. of America v. N. L. R. B., supra, page 89 of 304 F.2d.

There are many businesses in which management may make a choice as to the manner in which the business shall be conducted, and that choice will be respected. United Insurance Co. of America v. N. L. R. B., supra, pages 90–91 of 304 F.2d. This, in our opinion, is true of the business in which Site is engaged. It may operate one of its filling stations itself by its own employees or it may lease the station to an independent contractor to operate.

█ Upon consideration of the entire record in the instant case, we conclude that the evidence tending to support the determination of the Board that Site was the employer of its lessees and the station attendants whom the lessees employed and supervised is too unsubstantial to sustain the Board's decision and order.

The petition of Site for review and vacation of the Board's order is granted, and the cross-petition of the Board for enforcement of its order is denied.