**Adeline WOLFE, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 77–1434.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 18, 1977.

Decided Feb. 9, 1978.

C. J. Serkland, Fargo, N. D. (argued), and David R. Bailly of Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D., on brief, for appellant.

Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D. C., argued, for appellee; James R. Britton, U. S. Atty., Fargo, N. D., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Crombie J. D. Garrett and Carolyn R. Justice, Attys., Tax. Div., Dept. of Justice, Washington, D. C., on brief.

Before WEBSTER and HENLEY, Circuit Judges, and SMITH, Senior District Judge.*

HENLEY, Circuit Judge.

This federal internal revenue tax refund case, which involves income tax withholdings and payroll taxes,[1] comes to us as an appeal by the plaintiff from an adverse

* The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. In addition to income tax withholdings required by 26 U.S.C. §§ 3401 *et seq.*, we are concerned here with taxes imposed by the Federal Insurance Contributions Act (FICA), 26 U.S.C. §§ 3101 *et seq.* and by the Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301 *et seq.*

judgment of the United States District Court for the District of North Dakota.

The tax years involved are 1969, 1970 and 1971. During those years the plaintiff, Adeline Wolfe, was the operator of a combination wig store and beauty shop in Devils Lake, North Dakota. While the wig store and the beauty shop were located on the same general premises and had certain employees in common, they were actually separate establishments.

During the years in question plaintiff recognized that the employees of the wig store and the employees common to both establishments were "employees" within the meaning of the federal tax laws, and she faithfully discharged her responsibilities to the government as far as those employees were concerned. However, plaintiff took the position that the beauticians who served customers in the beauty parlor were not "employees" within the meaning of the law and that she had no tax responsibilities with respect to them. Accordingly, plaintiff did not withhold income taxes from the earnings of the operators, nor did she withhold or make payments called for by the Federal Insurance Contributions Act, or file the quarterly returns called for by that Act, and by the withholding requirements of the income tax laws. And, the plaintiff did not make payments into the North Dakota unemployment compensation fund which would have satisfied her obligations under the Federal Unemployment Tax Act.

In 1973 the Commissioner of Internal Revenue determined that the operators in question were in fact employees of the plaintiff during 1969, 1970 and 1971, and he assessed against the plaintiff deficiencies, including interest and penalties, which by the time of trial in the district court in March, 1977 amounted to approximately $34,000.00.

Having made his assessment, the Commissioner filed notice of tax liens, and he may have levied upon plaintiff's business assets. In July, 1975 plaintiff paid the assessments for certain particular quarters amounting to some $6400.00 and filed claims for refunds. Those claims were denied, and plaintiff commenced this refund suit in January, 1976.

The government answered the complaint and denied that plaintiff was entitled to any refund. In addition the government filed a counterclaim against plaintiff in which it sought judgment for the difference between the total amount allegedly due the government and the amount that the plaintiff had paid.

The parties are, and always have been, in agreement that the only substantial issue between them is whether the relationship between plaintiff and the operators working in plaintiff's beauty shop, if judged by ordinary common law rules, was that of employer-employee or whether the relationship was something else. That issue was the subject of a bench trial before Judge Benson.[2] On March 28, 1977 he filed a Memorandum of Decision and Order in which he found ultimately that the plaintiff had failed to carry her burden of proof. Judgment was entered dismissing the complaint and giving the government judgment against the plaintiff on the government's counterclaim. This appeal was duly taken.

There is no question that under pertinent statutory provisions, Treasury Regulations and judicial decisions, common law rules are determinative of the question of whether the relationship between a person who renders services to another and the recipient of those services is that of an employee as far as the person rendering the service is concerned.[3]

---

**2.** The Honorable Paul Benson, Chief Judge, United States District Court, District of North Dakota.

**3.** *See in general* 26 U.S.C. § 3121(d); 26 U.S.C. § 3306(i) including the 1970 amendment to that section; 26 U.S.C. § 3401(c); 26 C.F.R. §§ 31.-

3121(d)–1, 3306(i)–1 and 3401(c)–1; *United States v. Webb, Inc.,* 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *Air Terminal Cab, Inc. v. United States,* 341 F.Supp. 1257 (E.D.Mo.1972), *reversed on merits,* 478 F.2d 575 (8th Cir.), *cert. denied,* 414

This court has dealt with the question of employer-employee relationships in the present context in a number of cases, and we have consistently held that each case must be decided in the light of its own facts and circumstances; and that while the right of the person sought to be charged as an employer to control the alleged employee not only with respect to the end to be accomplished but also with respect to the details, means and methods of the accomplishment is perhaps the principal factor to be considered, it is not necessarily controlling and that all of the factors in the case must be taken into consideration. *See Kiesel v. United States*, 545 F.2d 1144 (8th Cir. 1976); *Azad v. United States*, 388 F.2d 74 (8th Cir. 1968); *Saiki v. United States*, 306 F.2d 642 (8th Cir. 1962). And in *Site Oil Co. of Mo. v. National Labor Relations Board*, 319 F.2d 86, 91 (8th Cir. 1963), the late Judge John B. Sanborn, writing for the court, said after citing *Saiki, supra,* that the test for determining the status of workers is easier to state than it is to apply, and that each case must stand or fall on its own facts.

In *Avis Rent A Car System, Inc. v. United States*, 503 F.2d 423, 429 (2d Cir. 1974), the court of appeals distilled from *Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947), and *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), seven criteria to be considered in answering the question with which we are concerned: (1) Right of control on the part of the alleged employer; (2) substantiality of the investment of the person rendering the service in his own tools and equipment; (3) the cost incurred by the alleged employee in rendering the service, as by the employment of his own laborers; (4) the ability of the person rendering the service to profit from his own "managerial skills"; (5) whether or not the service involved requires a special skill; (6) the permanency of the relationship between the parties; and (7) whether the person rendering the service works in the course of the recipient's business rather than in an ancillary capacity.

As was recognized in *Avis,* some of those factors may in a given case point to an employer-employee relationship; others may point to a contractee-independent contractor relationship. The opinion of the district court was constructed largely around the *Avis* criteria, and counsel on both sides have generally taken the same approach in connection with this appeal.

There is no substantial dispute between the parties as to the subsidiary or evidentiary facts of the case, and we set them out as found by the district court:

Prior to the tax years in question, Plaintiff owned and operated a beauty shop in Devils Lake, North Dakota, and employed three or four persons. In 1969, she moved her business to a new location within Devils Lake. That business had facilities for operating eight booths and included a reception room and desks. Each booth contained a dressing table, sink, drawers, hamper, a styling chair and a mirror. A beautician-operator was secured for each booth.

At the new location, Plaintiff also owned and operated a wig business, which was totally separate from the beauty salon. Plaintiff employed three salaried persons, two receptionists and one janitor, for whom income taxes were withheld, F.I.C.A. contributions were made and for whom Plaintiff paid F.U. T.A. taxes.

In her beauty shop operation, Plaintiff initially interviewed each operator and orally agreed with the operator on a percentage split of the charges for services generated by each operator. The percentage varied according to the experience of the operator. [Footnote omitted.] A booth assigned to a beautician was for her exclusive use and she was responsible for the care of it. She would handle her own customers and furnish her own tools and equipment, which consisted essentially of razors, scissors, capes, rubber gloves, dispensory for wave set, clamps and per-

U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 146 (1973); *Azad v. United States*, 388 F.2d 74 (8th Cir.

1968); *Saiki v. United States*, 306 F.2d 642 (8th Cir. 1962).

manent wave rods. Plaintiff had some tools available that the beauticians could purchase from her. [Footnote omitted.] If a beautician did purchase tools from Plaintiff, the purchase price was deducted from her percentage of the receipts.

As part of the arrangement, Plaintiff also furnished certain of the chemicals used by various operators. A permanent wave solution, hair coloring and a 'general clean shampoo' were all supplied by Plaintiff. Other chemicals used by operators but which were not furnished under the terms of the agreement included peroxide, hair conditioners and hair spray. If a particular operator wanted a special shampoo, she had to furnish it herself. [Footnote omitted.] The supplies were purchased either from Plaintiff's stock or from other beauty shop suppliers.

Appointments for each hair dresser were made through the receptionist, although each operator set her own hours, and had her own key to the facility. When a customer had received services, the beautician would hand to the customer a slip or ticket with that beautician's name on it, on which the beautician had noted the customer's name, the work done and the amount to be charged the customer. The customer was then told to take the ticket to the receptionist, who would receive payment, make change if required, and record in a book a credit for the amount received under the name of the particular beautician.

Receipts would be credited to each operator's account, and charges would be made against such accounts for any supply or tool purchases made by the operator from Plaintiff's stock. Once a week or "periodically," each operator was paid her percentage of the amount of money she brought in from her customers during the pay period, less charges for supplies, tools and booth rental.

Each operator was required to possess a minimum of 1800 hours of training, pass a state examination and be licensed. In addition, the operator had to possess sufficient skills to perform customary beauty treatments. Once the beautician-operator began work, Plaintiff did not supervise her. The operators would decide what prices to charge their customers, subject however to a minimum fee required by state law.

The beauticians could have credit customers if they wanted, and each was solely responsible for checks received with insufficient funds.

Plaintiff required certain minimum notice be given her before an operator could take a Saturday off or go on vacation.

Plaintiff had no training sessions. She did not maintain malpractice insurance on the operators. Plaintiff had no right to impose customers on the operators. If a customer called and wanted service, Plaintiff would ask the operator if they wanted the customer.

After stating those facts the district court discussed them in the light of the *Avis* criteria and concluded finally that the plaintiff had failed to establish by a preponderance of the evidence that the relationship between the operators and the plaintiff was that of independent contractors. While that inference or conclusion is stated in terms of the plaintiff having failed to discharge her burden of persuasion on her complaint, nevertheless, as has been seen, the district court gave the government judgment on its counterclaim. It thus appears that the district court did not consider that the evidence in the case was in equal balance, and we construe its conclusion as an affirmative finding that the operators were employees of the plaintiff within recognized common law rules. And it is the correctness or at least the permissibility of that finding that is in issue here.

This is an appellate court, and we are bound to accept the factual findings of the district court unless they are "clearly erroneous" as that term is conventionally understood in this circuit and elsewhere. Fed. R.Civ.P. 52(a). And a finding is not clearly erroneous merely because a reviewing appellate court might have made a contrary finding on the same evidence. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395

U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

We consider the question before us to be a close one, and we have some trouble with the result reached by the district court. However, we find ourselves unable to say that the trial judge's ultimate finding is clearly erroneous, and thus the district court's judgment is affirmed.[4]

---

**4.** We wish to make it clear to the Internal Revenue Service, to the owners of beauty and barber shops, and to persons who work in such shops belonging to others, that we are not holding that as a general rule the operators in such shops either are or are not "employees" of the owners. Operators in one shop may be "employees"; those in another shop may be "independent contractors," and those in a third shop may actually be "tenants" of the owner with their rent based on a percentage of their income and with the owner of the shop furnishing space and perhaps other facilities. All that we hold is that the ultimate factual finding of the district court in this case is not clearly erroneous.